JOSEPH J. POUNDER ET AL., APPELLANTS, V. J. P. ASHE ET AL., APPELLEES.

FILED MARCH 29, 1893.   No. 4973.

1. **Religious Societies**: REGULARITY OF ECCLESIASTICAL PRO-CEEDINGS: REVIEW. When rights of property are in queston, civil courts will inquire whether or not the organic rules and forms of proceedings prescribed by the ecclesiastical body have been followed.

2. ———: ———: ———: PROPERTY RIGHTS. When tested by such organic rules and forms, it is found that the proceedings of an ecclesiastical tribunal were without jurisdiction, such proceedings will be held void in so far as such proceedings necessarily and directly involve property rights.

3. ———: PROCEEDINGS TO REMOVE CLERGYMAN: REVIEW. The proceedings, whereby it was sought to exclude one of the defendants from his clerical functions, examined and *held* not to be in accordance with the procedure established by the church discipline in question.

APPEAL from the district court of Seward county. Heard below before BATES, J.

*Norval Bros. & Lowley,* for appellants:

The civil courts having no ecclesiastical jurisdiction, cannot review or question ordinary acts or church discipline, or excision, and only have judicial power in cases arising from conflicting claims of parties to the church property and the use of it. The civil courts cannot decide who should be members of the church, nor whether those excommunicated have been justly or unjustly, regularly or irregularly, cut off from the body of the church, and the decision of the church or church judicatory is binding upon the courts upon all such questions. (*Gaff v. Greer,* 88 Ind., 122; *State v. Farris,* 45 Mo., 183; *Robertson v. Bullions,* 9 Barb. [N. Y.], 64, 134; *German Reformed Church v. Seibert,* 3 Pa. St., 282; *Gibson v. Armstrong,* 7 B. Mon. [Ky.], 481; *Harmon v. Drehrer,* 1 Spear Eq. [S. Car.], 87.) It is the duty of a court of equity where a disturbance is threatened, or where the church is being used or attempted to be used for a different purpose than that for which it was intended, to interfere by injunction and restrain such unlawful use. (*Baker v. Ducker,* 79 Cal., 365; *Brown v. Monroe,* 80 Ky., 443; *Hackney v. Vawter,* 39 Id., 615; *Rottman v. Bartling,* 22 Neb., 375.)

*Ed. P. Smith, E. B. Esher,* and *E. C. Biggs, contra:*

Where property rights are involved civil courts have authority to inquire into the jurisdiction and regularity of ecclesiastical tribunals. The decree of a church judicatory is binding only when it is affirmatively shown that it has acted within the scope of its authority and has observed its own organic forms and rules. (Beach, Private Corporations, secs. 85–92; High, Injunctions, sec. 308; *Walker v. Wainwright,* 16 Barb. [N. Y.], 486; *Otto v. Journeymen Tailors' Protective & Benevolent Union,* 75 Cal., 308; *Smith v. Nilson,* 18 Vt., 511; *Watson v. Avery,* 2 Bush [Ky.], 335; *Fritz v. Muck,* 62 How. Pr. [N. Y.], 69; *Common-*

*wealth v. German Society*, 15 Pa. St., 251; *Keer's Appeal*, 89 Id., 112; *Jones v. State*, 28 Neb., 497; *Chase v. Cheney*, 58 Ill., 509; *O'Hara v. Stack*, 90 Pa. St., 490.)

Ryan, C.

This action was begun in the district court of Seward county by the appellants to restrain the appellees from using a certain church building for religious exercises conducted by defendant Ashe. The controversy focuses about the right of said Ashe to officiate as a clergyman of the church of Mount Zion of the Beaver Crossing Mission of the Evangelical Association of North America. It is not disputed that Mr. Ashe was assigned to this charge by the annual conference of said association in March of the year 1890, and that at the commencement of this action his term had not ended by its own limitation. Incidentally the regularity of the proceedings of said annual conference were questioned because, as insisted, the discipline of said association required the bishop, if present, to preside thereat, a requirement, if such it was, more honored in the breach than in the observance. This contention is noted, not because strictly necessary to a decision of the matters really in controversy, but that proceedings hereinafter referred to may be the better understood. There is no serious disagreement as to the facts of this case; at least such facts as are not controverted will suffice for the determination of this appeal.

From the pleadings it is not open to question that the annual conference aforesaid assigned Mr. Ashe to the charge now in controversy, and said pleadings admit that Mr. Ashe was exercising said functions until this action was begun. By injunction it was sought to terminate such functions upon the ground that Mr. Ashe had been subsequently to his said assignment duly suspended and himself deposed from his ministerial position. Involving as this does the conflicting claims of parties to the church property and the

use of it, civil courts have jurisdiction to try and determine such claims subject to certain limitations fixed and observed by such courts. It is indispensable to the existence of church organization, discipline, and efficiency that civil courts refrain from the usurpation and exercise of judicial functions properly inherent in ecclesiastical authorities, hence a reference to the decisions of some of the courts of last resort bearing upon that subject will not be unprofitable.

In *O'Hara v. Stack,* 90 Pa. St., 490, it was held that when rights of property are in question civil courts will inquire whether the organic rules and forms of proceedings prescribed by the ecclesiastical body have been followed.

The supreme court of Vermont has held that the proceedings of the synod of the Presbyterian church as a court of last resort are not absolute or conclusive when they come in question, whether directly or collaterally, in a court of law, but that such proceedings may be inquired into upon the same principles as subject the proceedings of voluntary associations to inquiry and adjudication. (*Smith v. Nelson,* 18 Vt., 511.) This doctrine was stated with approval in *Watson v. Avery,* 2 Bush [Ky.], 332, and is without doubt the consensus of judicial opinion.

There is not entire harmony as to the exact language of the charges and specifications upon which was predicated the removal of defendant Ashe, but as the difference is more in matters of mere form than in substance, the copy attached to the bill of exceptions is taken as sufficiently exact for the purposes under consideration. It is as follows:

"BEAVER CROSSING, June 4, 1890.

"I, A. W. Schenberger, presiding elder of the Blue Springs district of the Platte River conference of the Evangelical Association, do prefer charges against Rev. J. P. Ashe, for actions and sayings unbecoming a minister and which has caused dissensions and disturbed the peace,

and harmony, and prosperity of our society at Beaver Crossing.

"Specification A. In having certain resolutions passed by the board of trustees of the church which caused great dissatisfaction, which is contrary to the discipline.

"Specification B. In misrepresenting the interest and action of the Platte River conference, and especially at its last session, and the interest of the members of the society at Beaver Crossing by intimidating on the finance.

"Specification C. In neglecting or refusing to observe our book of discipline, as found on page 67, question 96, answer 2, also in answer 4, in lines 2 and 3 at the top of page 68, in book of discipline.

## "A CHARGE FOR IGNORING HIS SUPERIOR IN OFFICE AND DECEPTION.

"Specification A. On Monday, June 2, he told me that he did not recognize me as a presiding elder nor a member of the church since last conference. Same night in the church he said I was no elder and that he would not accept any charge from me.

"Specification B. In practicing deception in keeping me ignorant of what he was influencing the trustees to do. Giving the wrong advice to the members, which is an open violation of discipline, as found on page 71, answer 8.

"Specification C. In practicing deception with me inasmuch as he was told by ex-Bishop Esher at the last annual conference that he, Ashe, should stay at Beaver Crossing Mission and then some time in the future he should come over to ———— and bring the church property and people with him.

"Specification D. In communing with me on Sabbath, the first of June, also recognized me to hold quarterly conference on Saturday previous and do business, and then on the following Monday told me I was no P. E., neither member of the church.

"To J. P. Ashe.　　　A. W. SCHENBERGER."

Upon these charges and specifications a trial was had June 15, 1890, before a committee composed of five elders, presiding elder Anthony, of an adjacent district, presiding. The accused was by this committee found guilty upon each specification. These proceedings were afterward ratified by the annual conference, though no appearance thereto was made by Mr. Ashe, neither, so far as the record shows, had he any notice of such proposed action by the conference, nor was there any appeal.

This condition of affairs requires an examination of the discipline of the Evangelical Association of North America to determine which contention is correct as to the jurisdiction of the committee by whom Mr. Ashe was tried and suspended.

The appellants contend that the committee had jurisdiction to hear and determine these charges and specifications, and if they were sustained by proofs, to suspend Rev. Ashe from his official functions. On the other hand, the appellees deny this jurisdiction. These diverse views depend wholly for their importance upon the provisions of the "Discipline, part VI, ch. 2, sections 119 and 120 respectively. These sections, so far as applicable, are as follows:

" § 119. Ques. What shall be done if an elder, deacon, or preacher is under report of being guilty of some crime expressly forbidden in the Word of God as an unchristian practice, sufficient to exclude a person from the kingdom of grace and glory?

"Ans. 1. In case there be no bishop present the presiding elder shall call in as many ministers of the church as he shall think proper, yet not less than three, and bring the accuser and accused face to face. If the accused be clearly convicted of the alleged crime, he shall be suspended from all his legal functions or excluded according to the nature of the offense until the next annual conference, which shall finally decide the case.    *    *    *    But in case a pre-

siding elder has charges against a preacher in his district the trial shall be conducted, in the absence of the bishop, by the presiding elder of an adjacent district.

"§ 120. Ques. What shall be done in case of improper words, actions, or temper?

"Ans. The accused shall be reprimanded by his senior in office. Should he repeat the same transgression, then one, two, or three preachers are to be taken along as witnesses to enforce a second reproof. If he be not then cured of the evil he shall be tried at the next annual conference. And if found guilty and incorrigible, he shall be excluded."

The language in section 119, *supra*, which follows the word "crime," requires that not only must the offense be a crime but it must be one expressly forbidden in the Word of God, as an unchristian practice, sufficient to exclude a person from the kingdom of grace and glory. Of these qualifications of the word "crime," civil courts obviously have no jurisdiction. The definition of the word "crime," however, is not peculiarly or exclusively of ecclesiastical cognizance. That word has a generally accepted, clear, legal meaning, and where individual rights or interests in property hinge upon the definition of this word such meaning must prevail.

In Anderson's Dictionary of Law the word "crime" is thus defined: "An act committed or omitted in violation of a public law either forbidding or commanding it" (citing 4 Blackstone's Commentaries, 5); "a wrong of which the law takes cognizance as injurious to the public, and punishes in what is called a criminal proceeding prosecuted by the state in its own name or in the name of the people or the sovereign." (Citing *re Bergin*, 31 Wis., 386.) "Crime and misdemeanor are synonymous terms; though in common usage 'crimes' denote such offenses as are of a deeper and more atrocious dye; while smaller faults and omissions of less consequence are comprised under the gentler name of 'misdemeanors.' In short, the term 'crime' embraces any

and every indictable offense." (Citing *People v. Police Com'rs*, 39 Hun, 510; 7 Conn., 185; 60 Ill., 168; 32 N. J. L., 144; 9 Wend., 212; 9 Tex., 340; 24 How., 102; 26 Vt., 208; 41 Id., 511.) "Yet it is not synonymous with 'felony.'"

Other law dictionaries adopt the same definition as above given, hence it may be accepted that Blackstone's definition of the word as "an act committed or omitted in violation of a public law either forbidding or commanding it," is full and correct as applied to the charges and specifications upon which defendant Ashe was tried. The word "crime" is a gross misfit. In none of these is there found a single element of a crime, hence a committee constituted as was that which tried Mr. Ashe had no jurisdiction of the offenses charged under said discipline. Possibly the charges and specifications imputed to Rev. Ashe improper words, actions, or temper, in which event he should first have been reprimanded; upon a repetition of the impropriety he should have been reproved a second time in the presence of one, two, or three preachers as witnesses; then, *if found guilty and incorrigible at the next annual conference*, he should have been excluded. In cases of improper words, actions, or temper the discipline seems to contemplate serious, continued efforts to bring about penitence and reformation, and in case of utter failure in this commendable direction the *annual conference* must exclude the recalcitrant offender. On the other hand it is only when a crime has been committed that a committee summoned for the occasion may summarily eject the criminal, regardless of reformation or reproof. Improper words, actions, or temper, if not refrained from after due remonstrance, are to be inquired into at annual conference, and not by a committee; and in such class of offenses a committee is wholly without jurisdiction to suspend the offender. The defendant Ashe having been duly assigned to the charge of the church, and at the commencement of this

action being in the exercise of his official functions, it is not necessary to inquire further into the tenure of his office, for he could be excluded therefrom in the civil courts only by one or more persons showing better right thereto. It follows, therefore, that the judgment of the district court must be

AFFIRMED.

THE other commissioners concur.