JOSEPH J. POUNDER ET AL., APPELLANTS, V. J. P. ASHE
ET AL., APPELLEES.

FILED APRIL 5, 1895.    No. 4973.

1. **Religious Societies:** REGULARITY OF ECCLESIASTICAL PRO-
CEEDINGS: REVIEW BY CIVIL COURTS. Where a local church
organization is a member of an association of congregations
having a set of general rules for the government and conduct of
all its members and officers and the orders and judgments of the
association are binding upon the minor organizations or con-
gregations composing it, its decisions, in so far as they relate
exclusively to church affairs and government, are absolute and
will be so regarded by legal tribunals.

2. ———: ———: ———. Courts which have no ecclesiastical juris-
diction will not review or revise the proceedings during trial by,
or judgments of church tribunals, constituted by the organic laws
of the church organization, where they involve solely questions,
of the church organization, and discipline or infractions of the
laws and ordinances enacted by its ruling body for the govern-
ment of its officers and members.

3. ———: ———: REMOVAL OF CLERGYMEN: REVIEW OF PRO-
CEEDINGS: INJUNCTION. Where charges have been preferred
against a minister of the gospel, and he has been adjudged guilty
by the highest tribunal of the church organization before which
the matter has been presented, and deposed from the ministry
and expelled from membership in the church, courts will recog-
nize such judgments of the church tribunal and enforce their
observance when regularly brought to their notice, and in an
action for the purpose will enjoin the one against whom they
were rendered from further acting in the capacity of a minister
or enjoying the rights of a member of the particular church or-

ganization, and will also enjoin such party and members of the local congregation or others who have combined with him from excluding from the church building and property and its use for any proper purpose, or from disturbing them in or during such use, parties, ministers appointed to take charge of the congregation and church, by the then, so far as the evidence in the case before the court discloses, recognized and appointive power, or in so excluding and disturbing a presiding elder of the church from or in its proper occupancy or use or any members in good standing who desire to worship therein in a regular manner and according to the established rules and ordinances of the church, where it further appears that the church property was conveyed to the organization or its trustees, for church purposes and in such a manner that it is subject to the control of the general association or governing power of the church and its rules and laws.

REHEARING of case reported in 36 Neb., 564.

*Norval Bros. & Lowley,* for appellants.

*Ed. P. Smith, E. B. Esher,* and *E. C. Biggs, contra.*

HARRISON, J.

The appellants commenced this action in the district court of Seward county, the object being to obtain an order of injunction restraining the appellees from interfering with or disturbing appellants in their use of a certain church building known as the Church of Mount Zion of the Beaver Crossing Mission of the Evangelical Association of North America, or their conducting religious exercises therein, and also restraining J. P. Ashe of defendants from officiating as minister at religious gatherings of the congregation in such church. There was a trial of the issues joined in the district court and a finding and judgment in favor of defendants, from which plaintiffs appealed to this court, and on hearing the judgment of the trial court was affirmed. A motion for rehearing was presented and granted. For a statement of the case we refer to the former opinion, reported in 36 Neb., 564. The decision of the controversy

47

hinges, in the main, upon the right of Mr. Ashe to remain in charge as clergyman or minister of the congregation at Beaver Crossing. The deed by which the lots upon which the church was situated was conveyed to the trustees of Zion church was introduced in evidence, and an examination of it shows that no person in particular can maintain any claim to its occupancy to the exclusion of others unless the right to do so be derived through the conference or governing bodies of the church organization, as it was conveyed to be used as a place of worship by the ministry and membership of the Evangelical Association of North America, which placed it entirely under the control and at the disposal of the ruling powers of the association. The discipline provides for the meeting of an annual conference and also a general conference, the first being held for, and having control and supervision over, the affairs of the association in what is designated a conference district, and the second to meet every four years for the whole association. Mr. Ashe had been assigned by an annual conference, as minister, to the performance of the church work at Beaver Crossing, and subsequently charges had been preferred against him and a trial had upon such charges, before a body called together and constituted as provided for in the discipline. He was notified of the time of trial and appeared before the court or investigating committee at the time appointed for the hearing and took some part in the proceedings, read what in the evidence is stated to have been a protest against the action then being taken, listened to a small portion of the testimony, and then withdrew. The committee adjudged him guilty and reported their action to the next annual conference, accompanying the report with the evidence and papers before them at the time of the trial. The annual conference made an examination of the matter as provided by the discipline and approved and ratified it. This action discharged him from the ministry and expelled him from the church. The discipline provided for

an appeal from the determination of the committee before
which the trial took place to the annual conference, and
also from the decision of the annual conference to the gen-
eral conference, neither of which privileges was claimed or
exercised by Mr. Ashe, he, evidently, having concluded to
continue in the work of the ministry of Beaver Crossing,
regardless of the action of either or both of these bodies,
the committee and annual conference.   The charges and
specifications made against Mr. Ashe, and upon which he
was tried and adjudged guilty by the committee, were as
follows:

"BEAVER CROSSING, June 4, 1890.

"I, A. W. Shenberger, presiding elder of the Blue
Springs district of the Platte river conference of the Ev.
Association, do prefer charges against Rev. J. P. Ashe, for
actions and sayings unbecoming a minister, and which has
caused dissensions and disturbed the peace and harmony
and prosperity of our society at Beaver Crossing.

"Specification A. In having certain resolutions passed
by the board of trustees of the church which caused great
dissatisfaction, which is contrary to the discipline.

"Specification B. In misrepresenting the interest and
action of the Platte river conference, and especially at its
last session, and the interest of the members of the society
at Beaver Crossing, by intimidating on the finance.

"Specification C. In neglecting or refusing to observe
our book of discipline as found on page 67, question 96,
answer 2, also in answer 4, in lines 2 and 3, at the top of
page 68, in book of discipline.

"A CHARGE FOR IGNORING HIS SUPERIOR IN OFFICE.
AND DECEPTION.

"Specification A. On Monday, June 2, he told me that
he did not recognize me as a presiding elder nor a member
of the church since last conference.   Same night in the
church he said I was no elder and that he would not accept
any charge from me.

"Specification B. In practicing deception, in keeping me ignorant of what he was influencing the trustees to do, giving the wrong advice to the members, which is an open violation of the discipline as found on page 71, answer 8.

"Specification C. In practicing deception on me, inasmuch as he was told by ex-Bishop Esher at the last annual conference that he, Ashe, should stay at Beaver Crossing, and then some time in the future he should come over to —— and bring the church property and people with him.

"Specification D. In communing with me on Sabbath, the first of June, also recognized me to hold quarterly conference on Saturday previous and do business, and then on the following Monday told me I was no P. E., neither member of the church."

In the discipline, part 6, chapter 2, sections 119 and 120 are as follows:

"Sec. 119.  Ques. What shall be done if an elder, deacon, or preacher is under report of being guilty of some crime expressly forbidden in the word of God as an unchristian practice, sufficient to exclude a person from the kingdom of grace and glory?  Ans. 1. In case there be no bishop present the presiding elder shall call in as many ministers of the church as he shall think proper, yet not less than three, and bring the accuser and accused face to face.  If the accused be clearly convicted of the alleged crime, he shall be suspended from all his legal functions, excluded according to the nature of the offense until the next annual conference, which shall finally decide the case. * * * But in case a presiding elder has charges against a preacher in his district the trial shall be conducted in the absence of the bishop by the presiding elder of an adjacent district.

"Sec. 120.  Ques. What shall be done in case of improper words, actions, or temper?  Ans. The accused shall be reprimanded by his senior in office.  Should he repeat the same transgression, then one, two, or three preachers

are to be taken along as witnesses to enforce a second re-proof.    If he be not then cured of the evil he shall be tried at the next annual conference, and if found guilty and in-corrigible, he shall be excluded."

The committee evidently proceeded under section 119 in the trial, judgment, and recommendations, which they made and embodied in their report to the annual conference. This, it is contended by appellees, was an error on their part, that the charges were not such as to call for or to author-ize any trial under section 119, but rather disclosed that Mr. Ashe was a fit subject to be labored with and reproved or reprimanded, and if not reformed by such labor and ad-monition, then to be tried by the next annual conference as provided in section 120.    We will further say here, that in what is termed an "Appendix" to the discipline, it is stated that a committee to investigate charges "has to decide un-der which paragraph of the rules governing investigations the charges are to be placed."

In our former opinion it was held that inasmuch as the right to the occupancy and use of the church property would be affected, and to a limited extent involved and de-termined, the adjudication of the church committee or body vested with jurisdiction was not conclusive and absolute, but the whole proceedings would be reviewed, and if dis-covered to be erroneous and not in accordance with the organic rules prescribed by the governmental ecclesiastical body, would be held void in so far as they necessarily and directly involved property rights.    The appellants con-tended against the application of the doctrine then an-nounced, both at the time of the original hearing and in arguments filed on rehearing.    After a re-examination of the case and the authorities bearing upon the disputed question, which are conflicting, we are satisfied that our former decision was erroneous and must be overruled. The parties contending are but divisions of the one congre-gation belonging to the same church organization.    It is

true that each division is claiming that the other is a rebellious portion of the church and not entitled to recognition as members of the organization, but notwithstanding this, they owe allegiance to one and the same church, have one and the same belief, and are acting under the same church government and discipline, and, so far as the facts of this case disclose, are all members of the congregation at Beaver Crossing and recognized as such by the powers that be, the conference, bishops, presiding elders, etc., except Mr. Ashe, who has been deprived, by some at least, of these same powers, all that have in any manner had his case under consideration, of his right to act in a ministerial capacity and of membership in the church. The lay members joined the church knowing (or such knowledge must be imputed to them) and accepting and adopting the profession of faith of the association and accepting the rules and regulations of the organizations for the direction and guidance of their actions as such members, and Mr. Ashe as a member, and also a minister, and from all the evidence, a bright and active one, must be presumed to have been fully acquainted with the discipline and rules and regulations, and the right of the association to try him in the manner it did, if charges were preferred against him, including that of the duty of the committee to adjudicate the question of under which section and paragraph of the rules the charges must be heard and determined, and when he joined the church and entered its ministry, having assented to them, and, having thus selected and agreed to the tribunal and its powers and jurisdiction, in so far as it affects him alone and his rights to exercise his office as minister and as a member of the association, the civil courts cannot and will not examine the proceedings of the trial committee provided by the discipline, to ascertain whether it has in all things acted in accordance with the rules of the church, or construe the disciplinary laws of the association and take upon them the work of a re-.

view or retrial of the case and render in it such ver-
dict or judgment as from the court's construction of the
laws of the church, should have been announced. The
church property is for the use of the members of the
church, so long as they remain members, for the wor-
ship of God according to their articles of faith and
in the manner provided by the rules and instructions
and discipline of the association and may be so used at any
proper time by any member; but where a party had been
deprived of no other rights than those of officiating as
minister and drawing his salary for such work and ex-
pelled from the participation in the services of the church
as a member, and, so far as the record of such action as to
him discloses, it has been done in the manner prescribed in
the rules and regulations to which he gave his assent when
he joined the organization, and from the judgment of the
inferior committee and conference which so expelled him,
although the right of appeal to a higher church tribunal
exists, so far as we are informed, he does not care to or has
not exercised it, while these rights may by him have
been considered almost priceless and far greater and more
to be prized than any property rights, they are not so looked
upon in courts of law, nor do we think a case is presented
in which a court of law is called upon to or should review
the proceedings during the church trial. Furthermore, the
church should be free from the interference of the courts
where there is nothing drawn into question but the juris-
diction of the church over one of its members or ministers
or officers, and to try him, and, if need be, expel him for
the violation of some church ordinance or law, so long as
such action does not infringe upon his rights as a citizen
or the powers and jurisdiction of the state. In this country
of ours it has been almost, if not quite universally, and is
now thought to be, the best policy, and consistent with
good government, to let the church and state be completely
severed, or as nearly so as may be and can be with due ob-
servance of all proper laws.

The case of *Watson v. Avery*, 2 Bush [Ky.], 332, is cited
in the former decision of the case at bar, and is undoubt-
edly a strong and leading case in support of the doctrine
therein stated.   Upon the controversy which was litigated
in *Watson v. Avery*, with sufficient additions to the facts
therein litigated afterwards made by the efforts in that be-
half of the parties to the dispute to warrant the United
States courts in hearing the questions involved, notwith-
standing the plea of former adjudication in an opinion
written by Mr. Justice Miller in the case of *Watson v. Jones,*.
reported in 13 Wall. [U. S.], 679, very strong ground was
taken in favor of the contrary doctrine.   It is said: "In
this class of cases we think the rule of action which should
govern the civil courts, founded in a broad and sound view
of the relations of church and state under our system of
laws, and supported by a preponderating weight of judi-
cial authority, is that whenever the questions of discipline
or of faith, or ecclesiastical rule, custom, or law, have been
decided by the highest of these church judicatories to which
the matter has been carried, the legal tribunals must ac-
cept such decisions as final, and as binding on them in
their application to the case before them.   We concede at
the outset that the doctrine of the English courts is other-
wise.   *   *   *   In this country the full and free right to
entertain any religious belief, to practice any religious prin-
ciple, and to teach any religious doctrine which does not vio-
late the laws of morality and property, and which does not
infringe personal rights, is conceded to all.   The law knows
no heresy and is committed to the support of no dogma, the
establishment of no sect.   The right to organize voluntary
religious associations to assist in the expression and dis-
semination of any religious doctrine and to create tribunals
for the decision of controverted questions of faith within
the association and for the ecclesiastical government of all
the individual members, congregations, and officers within
the general association is unquestioned.   All who unite them-

selves to such a body do so with an implied consent of this government and are bound to submit to it. But it would be a vain consent, and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions and of their right to establish tribunals for the decision of questions arising among themselves that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for. * * * But it is a very different thing where a subject-matter of dispute, strictly and purely ecclesiastical in its character, a matter over which the civil courts exercise no jurisdiction, a matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them, becomes the subject of its action. It may be said here also that no jurisdiction has been conferred on the tribunal to try the particular case before it, or that, in its judgment, it exceeds the powers conferred upon it, or that the laws of the church do not authorize the particular form of proceeding adopted, and in a sense often used in the courts; all of those may be said to be questions of jurisdiction. But it is easy to see that if the civil courts are to inquire into all these matters, the whole subject of the doctrinal theology, the usages and customs, the written laws and fundamental organization of every religious denomination may, and must, be examined into with minuteness and care, for they would become in almost every case the *criteria* by which the validity of the ecclesiastical decree would be determined in the civil court. This principle would deprive these bodies of the right of construing their own church laws, * * * and would in effect transfer to the civil courts, where property rights were concerned, the decision of all ecclesiastical questions."

In the *German Reformed Church v. Seibert*, 3 Pa. St.,

291, the following language is used: "The decisions of ecclesiastical courts, like every other judicial tribunal, are final, as they are the best judges of what constitutes an offense against the word of God and the discipline of the church. Any other than those courts must be incompetent judges of matters of faith, discipline, and doctrine; and civil courts, if they should be so unwise as to attempt to supervise their judgments on matters which come within their jurisdiction, would only involve themselves in a sea of uncertainty and doubt which would do anything but improve either religion or good morals." (See, also, *Rike v. Floyd*, 6 O. Cir. Ct. Rep., 80; *Chase v. Cheney*, 58 Ill., 509, 11 Am. Rep., 95; *Shannon v. Frost*, 3 B. Mon. [Ky.], 258; *Nance v. Busby*, 15 L. R. A. [Tenn.], 801; *State v. Bibb Street Church*, 4 So. Rep. [Ala.], 40; *Landis v. Campbell*, 79 Mo., 433, 49 Am. Rep., 239; *Robertson v. Bullions*, 9 Barb. [N. Y.], 64; *Gaff v. Greer*, 88 Ind., 122; *White Lick Quarterly Meeting of Friends v. White Lick Quarterly Meeting of Friends*, 89 Ind., 136.)

The former decision herein is overruled, the judgment of the district court is reversed, and a decree entered in this court granting a perpetual injunction against the appellees.

DECREE ACCORDINGLY.

NORVAL, C. J., not sitting.