ST. VINCENT'S PARISH, APPELLEE, V. WILLIAM MURPHY,
APPELLANT.

FILED MARCH 5, 1909.    No. 15,577.·

1. Religious Societies: USE OF PROPERTY: INJUNCTION. When property
   has been acquired by a church organization for the purpose of
   religious worship in accordance with the doctrine and discipline
   of a particular denomination, persons claiming under such de-
   nomination, and not pretending in any way to hold adversely,
   or to have any title of their own, except as members thereof,
   may be enjoined from using such property contrary to the de-
   termination of the governing authorities of such denomination.

2. ————: GOVERNMENT: REVIEW BY COURTS. Where a local church or
   parish is a member of a general organization, having general
   rules for the government and conduct of all of its adherents,
   congregations and officers, the final orders and judgments of the
   general organization through its governing authority, so far as
   they relate exclusively to church affairs and church government,
   are binding on the local associations and their members and
   officers, and courts will not ordinarily review such final orders
   and judgments for the purpose of determining their regularity, or
   accordance with the discipline and usages of the general organiza-
   tion.

APPEAL from the district court for Seward county:
JAMES G. REEDER, JUDGE.    Affirmed.

R. S. Norval, J. J. Thomas and M. D. Carey, for appel-
lant.

A. J. Sawyer and C. E. Holland, contra.

BARNES, J.

St. Vincent's parish, a religious corporation, brought
this suit in the district court for Seward county against
the defendant, William Murphy, who, it is alleged, is a de-
posed priest of the Roman Catholic church, to restrain
him from exercising any of the rights, faculties or privi-
leges of a priest or rector in or upon the church property
of the plaintiff, and from hindering, interfering with or in

any manner preventing one Francis A. O'Brien, the regularly appointed priest of said parish, from performing his duties as rector thereof, from in any manner interfering with divine worship in the church of said parish, and from continuing to use, or from attempting to use, the church property or any part thereof. A trial resulted in a decree for the plaintiff, and the defendant brings the case here by appeal.

His first contention is that the plaintiff's petition does not state facts sufficient to confer jurisdiction of this case upon the district court for Seward county. A like proceeding was before this court in *Pounder v. Ashe*, 44 Neb. 672, where it was held that, where charges have been preferred against the minister of the gospel, and he has been deposed from such ministry, and expelled from membership in the church by the ecclesiastical tribunal having jurisdiction of such charges, the courts will recognize such judgments when regularly brought to their notice, and will enjoin the one against whom they were rendered from further acting in the capacity of a minister or a member of the particular church organization, and will enjoin him from excluding from the church building and property a presiding elder of the church, or any of its members in good standing who desire to worship therein. This rule was approved and followed in *Bonacum v. Harrington*, 65 Neb. 831. That case was very like the one at bar. The defendant, Harrington, who was officiating as priest in the parish of Orleans, Nebraska, was expelled by the bishop of Lincoln from the church and from that parish. He refused to surrender the church property, and the bishop brought a suit in equity to restrain him from interfering with said property, and holding possession thereof to the exclusion of the parish priest who had been appointed to succeed him. The district court denied the injunction, but this court on appeal reversed the judgment and remanded the cause, with directions to the district court to enter a decree enjoining the defendant as prayed, and make the injunction perpetual. It will thus be seen

that we have already determined this question adversely to the defendant's contention. We find that this rule is sustained by the great weight of authority in this country, and the objection to the jurisdiction of the district court was properly overruled.

Defendant's second contention is that the district court erred in refusing to dismiss this action. The ground of his motion to dismiss was that the trustees of the parish were not duly notified to attend the meeting which authorized the bringing of this suit. It appears that the business affairs of the plaintiff are controlled and administered by a board of trustees, consisting of the bishop of Lincoln, the vicar-general of the diocese, the rector for the time being of the parish of St. Vincent, and two laymen, whose election must be confirmed by the bishop; that at the meeting called for the purpose of considering the matter of the commencement of this action there were present the bishop of Lincoln, the vicar-general of the diocese by proxy, the Reverend Francis A. O'Brien as rector of the parish, and one of the two laymen who had been regularly elected as a trustee. It also appears that one of the lay trustees was not notified of the meeting because he had withdrawn from the regular church organization and had become one of defendant's adherents. It therefore appears that a majority of the regularly constituted board of trustees was present and took part in the proceedings of the meeting which authorized the commencement of this action. So we are of opinion that the district court properly refused to dismiss the action upon the defendant's application therefor.

We come now to consider the principal or main contention presented by the record. It appears that the bishop of the diocese of Lincoln on several occasions prior to the 22d of January, 1901, cited the defendant to appear before the diocesan curia at Lincoln, which is the ecclesiastical court of the Roman Catholic church having jurisdiction of all matters of church discipline, to show cause why he should not be proceeded against for contumacy and other

violations of the laws, ordinances and regulations of said church; that on each of said occasions the defendant, by letter only, challenged the right of the bishop to preside over said court on the trial of the charges preferred against him, and he alleges that he forthwith prosecuted his challenge and appeal in each of said citations to the sacred congregation of the propaganda fide at Rome. It also appears that the eccelesiastical court proceeded to hear and determine the charges against defendant, and at one time suspended the defendant from the sacred ministry and the performance of each and every ecclesiastical function for the space of one month. It further appears that the defendant was again cited to appear before said ecclesiastical court on the 22d day of January, 1901, to show cause why he should not be excommunicated for his frequently repeated violations of the rules, regulations and laws of the Roman Catholic church, and for contumacy toward the regularly constituted authorities thereof; that said citation contained a full and complete statement of the charges preferred against him; that defendant failed and refused to appear before said court, and again by letter objected to the jurisdiction of the bishop to preside over said court upon the proposed trial, and informed the bishop that he would again renew his challenge and appeal to Rome; that on the said 22d day of January, 1901, the defendant was tried upon the charges thus preferred against him, in his absence, and a decree, judgment or order of said court was rendered against him excommunicating him from the Roman Catholic church and excluding him from the diocese of Lincoln.

It is claimed by the defendant that his so-called appeals to Rome ousted the ecclesiastical court of jurisdiction; that the bishop had no right thereafter to proceed against him; that his appeal is still pending and undetermined; and that therefore he is still entitled to officiate as rector in St. Vincent's parish to the exclusion of the rights of his regularly appointed successor. It is conceded that the diocesan curia had jurisdiction of the subject matter of

the charges preferred against the defendant, and we find in the record sufficient competent evidence to show that whatever appeals the defendant has attempted to prosecute to the propaganda fide at Rome the same have been wholly disregarded, rejected and dismissed by that tribunal. The record thus presents for our consideration a question which we will not attempt to determine. It is sufficient for us to know that the ecclesiastical court of the Roman Catholic church, having jurisdiction over the defendant and of the charges preferred against him, has pronounced upon him a judgment of excommunication and expulsion which deprives him of the right to use or occupy the church property in question.

One of the first cases involving this question was that of *Shannon v. Frost,* 3 B. Mon. (Ky.) 253. In that case two discordant factions of the Baptist church were litigating their respective claims to the use of a house of public worship erected by that church upon ground conveyed in trust for its use and benefit, and it was there said: "This court, having no ecclesiastical jurisdiction, cannot revise or question ordinary acts of church discipline or excision. Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it. And these we must decide as we do all other civil controversies brought to this tribunal for ultimate decision. We cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly, cut off from the body of the church. We must take the fact of expulsion as conclusive proof that the persons expelled are not now members of the repudiating church; for, whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this court. For every judicial purpose in this case, therefore, we must consider the persons who were expelled by a vote of the church as no longer members of that church, or entitled to any rights or privileges incidental to or resulting from membership therein."

In the case of *Watson v. Jones,* 13 Wall. (U. S.) 679, *Shannon v. Frost, supra,* was cited with approval. The case was one growing out of a schism which divided the congregation of a Presbyterian church, and which was brought to the court to determine the right to the use of the property acquired for church purposes. It was said: "In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but in cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. There are in the Presbyterian system of ecclesiastical government, in regular succession, the presbytery over the session or local church, the synod over the presbytery, and the general assembly over all. These are called, in the language of the church organs, 'judicatories,' and they entertain appeals from the decisions of those below, and prescribe corrective measures in other cases. In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority, is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them." The rule there announced has been followed in *Chase v. Cheney,* 58 Ill. 509, in *Lutheran Evangelical Church v. Gristgau,* 34 Wis. 328, and by this court in *Pounder v. Ashe, supra,* and *Harrington v. Bonacum, supra.* We think we should adhere to this rule. It seems to be founded on sound reason, and has become the settled law of this state.

This disposes of all of the defendant's contentions, and

we are therefore of the opinion that the judgment of the district court was right, and it is in all things

AFFIRMED.

REESE, C. J., dissents.