PARISH OF THE IMMACULATE CONCEPTION, APPELLANT, V. WILLIAM MURPHY ET AL., APPELLEES.

FILED JUNE 13, 1911.   No. 16,394.

1. **Religious Societies**: GOVERNMENT: REVIEW BY COURTS. "Where a local church or parish is a member of a general organization, having general rules for the government and conduct of all of its adherents, congregations and officers, the final orders and judgments of the general organization through its governing authority, so far as they relate exclusively to church affairs and church government, are binding on the local associations and their members and officers, and courts will not ordinarily review such final orders and judgments for the purpose of determining their regularity, or accordance with the discipline and usages of the general organization." *St. Vincent's Parish v. Murphy*, 83 Neb. 630.

2. ————: POWER OF TRUSTEES: EXCOMMUNICATED PRIEST. The trustees of a religious corporation organized under section 40, ch. 16, Comp. St. 1899, and in conformity with the canons, discipline and faith of the Roman Catholic church, have no authority by virtue of their office to permit an excommunicated priest to occupy the corporation's church edifice which was consecrated by its founders to religious worship according to the canons and discipline and faith of that church, or to exercise the faculties of a priest therein.

3. ———: ———: INJUNCTION. If a majority of the trustees unite in diverting the temporalities of the corporation from the purposes to which they were devoted by its founders, a minority may maintain an action in the corporate name to enjoin such diversion.

APPEAL from the district court for Seward county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*C. E. Holland,* for appellant.

*Aldrich & Fuller, Norval Bros.* and *J. J. Thomas,* contra.

ROOT, J.

This is an action in equity to restrain the defendant from exercising any of the rights, faculties or privileges of a priest of the Roman Catholic church within the plaintiff's church edifice, and from interfering with Father O'Brien, the alleged regularly appointed rector of the parish, in the discharge of his duties. Before answer day a motion was filed by seven gentlemen, including the defendant, to dismiss the petition for the alleged reason that a majority of the plaintiff's trustees had not authorized the commencement of the action, but, on the contrary, desired that it should be dismissed. A motion was filed in the plaintiff's name to strike from the files the motion to dismiss, and upon issues informally joined, if they were joined at all, and without answer to the petition, the court heard evidence upon the substantial controversy between the contending individuals and dismissed the action. The court made no findings, but it must have adopted the theory of Messrs. McGowan, McNally, Murphy, Ward, Timoney, Schmidt and Jakl that by an alleged amendment to the plaintiff's articles of incorporation they became entitled to control its secular affairs, and by virtue of that authority had employed the defendant to occupy the plaintiff's church edifice and to celebrate the rites of the church therein.

The defendant William Murphy was also defendant in

*St. Vincent's Parish v. Murphy,* 83 Neb. 630, and this liti-
gation arises, as did the contention in the *St. Vincent* case,
over the order made by the bishop of the diocese of Lincoln
excommunicating the defendant. In 1897 the bishop ap-
pointed the defendant as priest of the Seward mission,
which contains two parishes, St. Vincent's, at Seward, and
the Immaculate Conception, at Ulysses. In 1900 the mem-
bers of the Ulysses congregation organized as a religious
corporation under the provisions of section 40 *et seq.,* ch.
16, Comp St. 1899. The document subscribed by the indi-
viduals is brief, and contains statements to the effect that
the signers had organized under the statute, *supra,* as a re-
ligious society "in conformity with the canons, discipline
and faith of the Catholic church," had adopted the name
of the Parish of the Immaculate Conception, and had se-
lected as *ex officio* trustees the bishop and the vicar general
of the diocese for the time being, the rector of the parish
for the time being, and two lay members, Messrs. McNally
and McGowan. The lay members of the board of trustees
were to be selected annually "in conformity with the can-
ons of the Catholic church and to hold office until their
successors are elected and duly qualified." The statement
was certified, and sworn to, by the clerk of the meeting,
and was filed in the office of the county clerk of Butler
county. Thereupon the members of that congregation by
force of law became a corporation aggregate. Father
Murphy participated in the incorporation, and continued
to minister to the spiritual wants of the members of the
congregations within the mission until removed by his
bishop, and subsequently excluded from the church and
parsonage of St. Vincent's parish by the judgment of the
district court, which was affirmed in this court on appeal.
*St. Vincent's Parish v. Murphy,* 83 Neb. 630.

Thereupon, in May, 1909, the defendant explained to his
congregation at Ulysses the result of that litigation, and
read to them certain amendments, which he suggested
should be made to the articles of incorporation. These
amendments were adopted at a subsequent meeting of the

congregation after two weeks' notice given after mass.  The proof is satisfactory that most of the members of the congregation were present at the time the notices were given and attended the meeting when the amendments were adopted without a dissenting voice.   The original articles were not repealed, but the amend. .ents provide that there shall be nine trustees who shall be elected by the members in good standing of the parish.   There shall be no *ex officio* trustees, and no .one is qualified for the office unless he has been for one year prior to his election a member of the parish in good standing.   The bishop and the vicar general of the diocese and seven laymen were elected as trustees. This action was instigated by the bishop of Lincoln, the vicar general of the diocese, and Father O'Brien, who has been appointed by the bishop as rector of the plaintiff parish.   The seven laymen united in asking that this case be dismissed, and all of them testify that, so far as they . know, the congregation want it dismissed and desire Father Murphy to officiate as their priest.

The plaintiff is incorporated as a society in conformity with the canons, discipline and faith of the Roman Catholic church.   The statute so permits.   The evidence is undisputed that, according to that discipline and those canons, local congregations and inferior officers of the church are under the jurisdiction and subject to the decrees of the higher officials and judicatories of the church with respect to ecclesiastical affairs, that the bishop of the diocese has authority to dismiss a priest or transfer him from one mission to another, and is vested with power to excommunicate priests as well as laymen within the diocese.   The decree of excommunication was not admitted in evidence, but sufficient appears to prove in this informal proceeding that the bishop exercised his authority to exclude the defendant from the priesthood and the church. We do not say that this proof will be sufficient if the defendant answers and the issue is tried on its merits, nor do we say that there is any such privity between the parties to this action and those in *St. Vincent's Parish v. Murphy,*

*supra,* that the judgment in that case will estop either party hereto.

In *Pounder v. Ashe,* 44 Neb. 672, we held that "where a local church organization is a member of an association of congregations having a set of general rules for the government and conduct of all its members and officers, and the orders and judgments of the association are binding upon the minor organizations or congregations composing it, its decisions, in so far as they relate exclusively to church affairs and goverment, are absolute, and will be so regarded by legal tribunals." In that case the annual conference of the Evangelical Association of North America, acting within its jurisdiction according to the discipline of the church, deprived Reverend Ashe of the right to officiate as a clergyman in and expelled him from the church, and it was held that he should be enjoined from exercising in a church of that denomination the faculties of a clergyman, and should be restrained from interfering with the minister entitled to that position. See, also, *Bonacum v. Harrington,* 65 Neb. 831; *St. Vincent's Parish v. Murphy, supra; Watson v. Jones,* 13 Wall. (U. S.) 679.

Father Murphy contends in the instant case, as he did in the *St. Vincent* case, *supra,* that the bishop had no authority to make the order of excommunication; that, however great the bishop's authority may be in matters spiritual, it does not extend to material things; and that the congregation of the plaintiff, acting through its trustees, may employ whomsoever they choose to minister to their spiritual wants, and have sole authority to commence, continue or dismiss any litigation prosecuted in the plaintiff's name. The defendant upon his cross-examination admitted that the diocesan court had authority, if rightfully exercised, to make the orders entered against him, but contended, as he did in the *St. Vincent* case, *supra,* that the order is void. If, upon the final hearing of this case, the proof shall be in the same condition that it was in the *St. Vincent* case, it will be the duty of the court to resolve this point against Father Murphy. The courts of the Ameri-

can Union are a unit in refusing to coerce any individual to worship according to any faith or creed or to worship at all, but they do not refuse to protect property rights because they may thereby interfere with the religious convictions of some individual or aggregation of individuals. The constitution of this state contemplates that the civil courts may be called upon to protect religious denominations in the peaceable enjoyment of their own form of worship. Section IV of the Bill of Rights provides: "All persons have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No person shall be compelled to attend, erect or support any place of worship against his consent, * * * Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the legislature to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction." The fact that a majority of the plaintiff's trustees prefer that Father Murphy should occupy its church edifice and control and use the vessels and vestments contained therein and consecrated to religious purposes according to the canons and faith of the Roman Catholic church does not oust the civil courts of jurisdiction, nor will a denial by the court of Father Murphy's asserted right to occupy control and employ that property contravene the fundamental law, *supra*.

The legislature in providing for the incorporation of religious societies, sects, bodies and denominations enacted section 167 *et seq.*, ch. 16, *supra*, which apply with peculiar force to the organization of the Roman Catholic church, but the bishop of the Lincoln diocese did not avail himself of this law. The legislature also enacted sections 40-44, ch. 16, *supra*, which afford the members of religious associations the right on their own initiative to incorporate. They may do so independently of any superior organization, and reserve exclusive control to themselves of such property as they may acquire, or they may organ-

37

ize in subordination to the discipline and rules of any greater body of which they may form an integral part.

In the instant case the members of the parish at Ulysses did not reserve to themselves the right to acquire, hold and enjoy property free from the discipline of the parent church, but specifically stated that they organized in subserviency thereto. The word "Roman" was not incorporated in the articles, but its presence should be implied. Section 42, ch. 16, Comp. St. 1899, specifically states that the trustees shall have authority to obtain, hold and enjoy such property, real and personal, as they may acquire, "for the purpose of carrying out the intentions of such society or association." The incorporators of the plaintiff plainly stated their intentions to organize "in conformity with the canons, discipline and faith of the Catholic church." The discipline and canons of that church do not permit, but, on the contrary, forbid under pain of extreme ecclesiastical punishment, an excommunicated priest to celebrate any of the rites of the church or to exercise any faculty of the priestly office. While the civil courts will not assume to generally restrain an exscinded priest from assuming to exercise the faculties of the priesthood, yet, if he insists in performing those functions in defiance of the mandates of his superiors having jurisdiction over him and in edifices which have been dedicated to the worship of the faith which he assumes to thereby represent, he perverts the trust which the law impresses upon property held for or dedicated to that worship, and the courts upon proper application will prevent that perversion. *Attorney General v. Welsh,* 4 Hare (Eng. Ch.) 572; *Miller v. Gable,* 2 Denio (N. Y.) 492; *Pounder v. Ashe, supra; Bonacum v. Harrington, supra.*

The trustees cannot authorize the diversion of the temporalities of the church from the purposes to which they were devoted by the founders. *Brunnenmeyer v. Buhre,* 32 Ill. 183. Litigation of this character has been sustained where so small a minority of an unincorporated association as one individual has complained that the temporalities of

a local congregation which formed part of a greater aggregation and was in subordination thereto were being applied to a purpose foreign and antagonistic to the discipline and faith of the parent organization. *Wiswell v. First Congregational Church,* 14 Ohio St. 31; *Attorney General v. Welsh, supra; Roshi's Appeal,* 69 Pa. St. 462. It is argued, however, that a majority of the plaintiff's board of trustees has the right to commence or dismiss suits, and the board, speaking through seven of the nine members and acting in accordance with the desires of practically all of the congregation, want Father Murphy to officiate as their spiritual consoler and minister and therefore this suit cannot be maintained.

We do not find it necessary to determine whether the amendments to the articles of incorporation are valid or otherwise, or whether a communicant of the church may or may not become a trustee unless the bishop of the diocese consents thereto. The bishop and vicar general are trustees of both boards, if it can be said that two boards exist, so that they are trustees of the plaintiff. In that capacity they have the right to institute and maintain any action which has for its purpose the vindication of the trust which the law impresses upon the property held in the plaintiff's name for use in conformity with the canons, discipline and faith of the Roman Catholic church. Such a suit may be maintained in the name of the corporation, and it does not lie within the power of a majority of the trustees, no matter how overwhelming, who are denying the authority of the church, to dismiss that action and thereby prevent the court from protecting the church from the intrusion of an excommunicated priest to the exclusion of a priest duly authorized by the ecclesiastical authority having jurisdiction over the subject. *First Reformed Presbyterian Church v. Bowden,* 14 Abb. N.·Cas. (N. Y.) 356; *Mt. Zion Baptist Church v. Whitmore,* 83 Ia. 138, 13 L. R. A. 198. Nor is it material that nearly all of the present members of the plaintiff desire Father Murphy's ministrations. The original incorporators devoted the plaintiff's property to a

specific purpose involving a trust for the benefit of all those individuals of the congregation who then desired, or in future years might desire, to worship Almighty God according to the faith and agreeable to the canons and discipline of the Roman Catholic church. The mutations of time have changed that membership, some of the incorporators doubtless have gone to their reward and new members have been received, but no financial consideration sustains their right to participate in the secular affairs of the corporation or of the religious functions of the church. Received as communicants of the faith, they will not be permitted to use its edifices for unlawful services or exclude its rightful minister from the lawful use of that property. If they prefer Father Murphy to Father O'Brien or to any other appointee of the bishop, they have the absolute right to worship under the direction of their chosen leader, to absent themselves from the plaintiff's church building and to refuse to contribute to the support of Father O'Brien or of the church, and the civil courts administering the law of the land will protect them in the lawful exercise of that right, but they should occupy, for the purpose of their worship, buildings and employ chattels not consecrated to another purpose.

The judgment of the district court therefore is reversed and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., dissenting.

I do not express any opinion upon the merits of the controversy between the officiating priest and the congregation at Ulysses, on the one side, and the bishop and other church officers upon the other. That the present conditions are unfortunate cannot be denied. But in the settlement of property rights involved in such controversies the courts are sometimes called into action and are compelled to settle and adjust such rights. They do not hesitate to discharge the duty when a proper case is presented for adjudication. Was such a case presented to the district

court and is such an one presented to this court? The real and underlying questions are: First. Is the church at Ulysses now operating under and governed by its amended articles of incorporation? Second. Is the present and acting board of trustees of that church the lawful board of trustees, or is the previous board, in existence before the adoption of the amended articles, the legal board? Third. Is the board which appeared and moved to dismiss this suit the lawful and rightful board of trustees? If they are, they had an absolute right to insist upon the dismissal of this suit, and the decision of the district court in dismissing the case was correct, and the only order which should have been made. In order to reach a proper decision of the controversy, it will be necessary to decide these questions, and in their decision the question of the title of the newer board to the office, which it is claimed they are usurping, is to be solved before the consideration of the relief to be granted can be entered upon. Can that question be settled in an action for an injunction, or must these questions of law be first adjudicated in a proper legal proceeding by an action in the nature of *quo warranto* or otherwise? It is my opinion that a court of equity has no power or jurisdiction to decide this question. *Sherman v. Clark*, 4 Nev. 138. It must be remembered that, strictly speaking, this is not a suit by or against the church corporation. It is not a suit against third parties who are invading the rights of the corporation, but it is a suit among those claiming to be officers, all of whom are members of the corporate body. There can be no adjudication without first deciding who are the legal trustees. This should only be done in and by a court of law. Until that question is decided, equity cannot interfere to try the rights of the claimants. In my opinion the decision of the district court was right and should be affirmed.