OTTO DUESSEL ET ALS. *vs.* LUDWIG PROCH ET ALS.

First Judicial District, Hartford, October Term, 1905.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Churches of the German Evangelical Lutheran order are congregational in polity, and each is therefore entitled to affiliate, by a majority vote, with any national synod or council of the denomination, and to change such affiliation from time to time as it may desire. *A fortiori*, a local church of that denomination, which has never connected itself with any council or synod, has the right to call a pastor belonging to a different synod from that to which the preceding pastor belonged.

Land was conveyed to certain persons as the " trustees of the German Evangelical Lutheran St. Paul's Church, Unaltered Augsburg Confession," and a church edifice was built thereon by money raised by subscription, but no purpose to devote the building to the use of any particular council or synod of the Lutheran church was expressed in the deed, or in the raising of the money. *Held* that the only trust attaching to the property was one for the benefit of the local church, and that a change of affiliation from one council or synod to another, or the dismissal of the pastor by a majority vote of the congregation, was not a breach of the trust.

A clause in the constitution of a church, that " the congregation as a whole " has the management of all its affairs, does not require action taken by the church to be assented to by every member ; but only that it shall be taken at a meeting duly warned and open to all the members.

Where a church which is congregational in its polity has by repeated votes and emphatic majorities refused to retain a pastor longer and has employed a new one, and the former brings an action for an injunction against the use of the church building for services conducted by any other minister than himself, it may be proper for the trial court, in the exercise of its discretion, to refuse the

injunction and leave the question of the legal title to the pastoral office undetermined.

In equitable proceedings, any events occurring after their institution, which go to show where the equity of the case lies at the time of the final hearing, may be pleaded and proved.

Argued October 5th—decided November 7th, 1905.

SUIT to restrain the defendants from interfering with or obstructing the holding of religious meetings by the plaintiffs in a certain church edifice in Terryville, and for other relief, brought to the Superior Court in Hartford County and tried to the court, *Roraback, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs. *No error.*

An appeal was originally taken to this court at the May Term, 1905. When reached for argument, the court suggested that unless additional parties were joined, no judgment could be pronounced that would conclude all those legally interested in the controversy. That appeal was accordingly withdrawn, the judgment in the Superior Court opened by consent, new parties added in that court, and a new judgment rendered in June, 1905, similar in effect to the original one.

*Noble E. Pierce,* for the appellants (plaintiffs).

*Epaphroditus Peck* and *Frederick A. Scott,* for the appellees (defendants).

BALDWIN, J. Otto Duessel, alleging himself to be pastor of a Lutheran church in Plymouth, and sundry members of that church and of the congregation by which it is supported, have brought this action against the congregation, the other members of the church and congregation, and the trustees who hold the title to the land occupied by the church building.

The finding of the trial court establishes these facts: The congregation, which is named the "German Evangelical

Lutheran St. Paul's Congregation, Unaltered Augsburg Confession," was organized in 1892.   German Evangelical Lutheran churches are Congregational in polity.   There are several different national associations or synods of such churches, but their powers over any particular local church are advisory and similar to those of associations and conferences of Congregational churches.   There is no church tribunal with jurisdiction to determine the questions in controversy in this action, or any matters of faith or church organization. St. Paul's church and congregation has never affiliated itself with any of the national associations or synods.   In 1896 it had as pastor one Jentsch, who was affiliated with one of these associations known as the General Council.   While under his charge the congregation adopted a constitution. This provided that it should be maintained as a branch of some neighboring congregation, calling the pastor of that to be its pastor, and that " the call extinguishes whenever the congregation dissolves itself; whenever the pastor leaves the German Lutheran Church; whenever the pastor publicly stirs up strife and must be deposed; whenever the pastor voluntarily gives up his office to the congregation."   In 1896 Mr. Jentsch resigned the pastorate and the plaintiff Duessel, who was affiliated with the national association known as the Missouri Synod, and pastor of a neighboring church in Bristol, began to serve in his place.   No formal call to him was voted, nor was he ever installed; but by continued services, payment of salary, and the common understanding of all parties, he became and in 1904 was pastor of the church, as well as of the Bristol church.

German Evangelical Lutheran churches of the General Council and of the Missouri Synod, alike, hold to the canonical books of the Old and New Testament as the Word of God, the Unaltered Augsburg Confession as the standard of faith and theology, and the Symbolical Books, so called, including the Apology of the Augsburg Confession, the Smalcald Articles, the Catechisms of Luther, and the Formula of Concord, as true and orthodox expositions of that faith. Theologians and ministers of the General Council and of

the Missouri Synod differ in some points of interpretation of the above-named standards ; the theological teaching of the Missouri Synod as to the doctrines of conversion, pre-destination, and election, differing from those of the General Council. These differences are deemed vital to orthodoxy by theologians of the Missouri Synod.

In 1901 a building lot in Plymouth was conveyed to three persons described as trustees of the German Evangelical Lutheran St. Paul's Church, Unaltered Augsburg Confession, of Plymouth, " and to their successors or assigns, trustees of said church," *habendum* " to them and their own proper use and behoof." Thereafter members of the congregation and others subscribed funds with which, and with the proceeds of a mortgage, a church building was erected on said lot. No purpose was expressed in the contributing or raising of the money, nor any trust created in connection therewith, devoting said church building to the uses of either the Missouri Synod or any other general organization of the Lutheran Church.

In 1902, having voted to abandon its existing constitution, the congregation adopted one framed, at its request, by Mr. Duessel. This provided that the right to call a pastor should belong to the whole congregation ; that a call should never be given for a fixed period, nor to a service to be terminated at the will of the congregation so long as the minister teaches " the Word of God pure and lives a Christian life, till God himself will call him to another field. But if the minister or teacher will teach false doctrines or leads an immoral conduct and will stay therein in spite of all admonition of the congregation and Synod, then he shall be discharged." Another article declared that " the congregation, as a whole, has the sovereignty of the interior or exterior management of all affairs ; " and a third that " to pass a resolution requires a majority of the members present."

Early in 1904 the congregation voted to discharge the defendant Proch, who was then its collector, from that office, and Mr. Duessel in a sermon remarked, in words understood to refer to Mr. Proch : " There is in this congregation a

worse than Judas Iscariot. Judas carried the bag, and this man also has the money. Judas went out and hanged himself. What will this man do?" At about the same time Mr. Duessel excluded one of the congregation from partaking of the communion, because he refused to make a public declaration of repentance for having been married by a Baptist minister, who was the pastor of the bride; such a marriage being forbidden by the rules and practice of the Missouri Synod. Mr. Duessel also declined one Sunday to step into the house of one of the congregation, at the request of the latter, and baptize his infant child who was lying at the point of death. The house stood next to the church. The child had received lay baptism, which Mr. Duessel thought sufficient. The Lutheran Church regards lay baptism as valid, but has provided a special ceremony for its confirmation by a pastor. Both the parents of the child were very anxious that it should receive clerical baptism, but it died without it. These incidents caused much bitterness of feeling towards Mr. Duessel on the part of many of the congregation.

Mr. Duessel frequently declared to the congregation in the spring of 1904, that he desired to relinquish the pastorate, and advised the choice of one who would be pastor of that congregation only, but insisted that his successor should be affiliated with the Missouri Synod. On July 20th, 1904, the congregation abolished the article regarding calling a pastor, contained in the constitution adopted in 1896.

It is a well settled rule of the Lutheran denomination that a pastor cannot be dismissed except by his own consent or for persistent, unchristian life, or upon the ground that he willingly teaches false doctrine.

On August 8th, 1904, a certificate was filed with the secretary of the State, stating that on August 2d the members of the church of the German Evangelical Lutheran St. Paul's Congregation of Plymouth had by a two-thirds vote, pursuant to General Statutes, Chap. 222, organized as a corporation under the name of the German Evangelical Lutheran St. Paul's Congregation of Terryville, Conn., to take

the place of the society known as the German Evangelical Lutheran St. Paul's Church, Unaltered Augsburg Confession. This was signed by the clerk and treasurer of the congregation and one of the trustees.

Between 1902 and 1905 several votes were passed at what were claimed by the defendants to be legal meetings of the congregation, repealing the constitution of 1902, re-adopting the previous constitution, dismissing Mr. Duessel from the pastorate, declaring that the church would not have a pastor belonging to the Missouri Synod, and resolving to call a pastor belonging to the General Council. The plaintiffs claimed that these meetings were not legally warned or conducted. In January, 1905, pending this action (at the suggestion of the trial judge), a meeting of the congregation was held under a proper call, and by a vote of 29 to 20 all those votes were formally ratified. The fact of such ratification was set up and admitted in supplemental pleadings.

The defendants, prior to the commencement of the suit, had forbidden Mr. Duessel to enter the pulpit of the church again, and had caused the locks on the church edifice to be changed, so that a key which he possessed would no longer admit him.

Under these circumstances, the Superior Court properly dismissed the complaint. It did not present a case of the use of a trust estate for purposes foreign to the trust. The only trust to which the church edifice was subject was a trust for the benefit of St. Paul's church, described as a German Evangelical Lutheran church adhering to the unaltered Augsburg Confession. The acts complained of have been sanctioned by the congregation which supports that church and is entitled to speak in its behalf. It is not disputed that the church still is and always has been a German Evangelical Lutheran church adhering to the unaltered Augsburg Confession. It was entitled to affiliate itself with any synod or council of the denomination, and to change its affiliation from time to time, should it so desire, by a vote of a majority of its members. *Lutheran Congregation* v. *St. Michael's Evangelical Church*, 48 Pa. St. 20. Being Congregational

in polity, this was one of its inherent rights. It did less than this in voting, pending the action, to call a pastor belonging to the General Council, and not to call one belonging to the Missouri Synod. Unanimous consent to such action, even if the congregation were an unincorporated association, was unnecessary for two reasons: first, because it worked no change in the purposes of the organization; and, secondly, because the constitution of 1902 expressly provided for majority rule. That constitution, so far as appears, was adopted by unanimous consent, and is alleged in the complaint to be a binding instrument which governs the rights of the parties to the cause. The claim that as the management of its affairs was by this constitution vested in the " whole " congregation, the assent of every member to every vote was required, is plainly untenable. This phrase referred to action at a meeting which all the members were entitled and had an opportunity to attend.

If Mr. Duessel be now the pastor of St. Paul's church he is not in this proceeding suing for his salary as such. So far as he is concerned, no question of property right is presented. He and his coplaintiffs have appealed for judicial aid to prevent certain acts, and to compel the performance of certain other acts in accordance with what they assert to be equitable duties. His exclusion from the pulpit, for reasons previously stated, violated no trust attaching to the church edifice. So far as concerns the claim in the complaint that the paper purporting to be a certificate of corporate organization be declared void, it was not disposed of by the judgment of the Superior Court, and the omission to pass upon it has not been made a cause of exception by either party. There is thus left to support the complaint nothing but the equity which it sets up to prevent the use of the church building under the ministry of any other pastor than Mr. Duessel, and to secure its use for services held under his charge.

To grant such relief would be to use the compelling power of a court of equity to dispossess the majority of the church and turn the church building over to a minority. It would

be to subject a church, which by the policy of the denomination to which it belongs is self-governing, to the overruling authority of that court as to the mode of conducting its religious services. It would—since the plaintiffs could not prevail without showing the continued existence of the pastoral relation between Mr. Duessel and the congregation —be to preclude a court of law from subsequently determining that question with the aid of a jury, should he bring suit for salary during the time which has elapsed since his exclusion from the pulpit. *Cox* v. *McClure*, 73 Conn. 486.

Upon the evidence before it on the trial of this cause, the Superior Court was justified in view of these considerations in declining to rule, as requested by the plaintiffs, that Mr. Duessel was still the lawful pastor of the church, and, in the exercise of its judicial discretion, in refusing the injunction claimed in the complaint. If he be its lawful pastor, it would be not in furtherance of equity, but against it, to interpose for his restoration to the pulpit of a congregational church the majority of whose members have by repeated votes, under such circumstances as are set out in the finding, manifested their unwillingness to continue under his ministry, or that of any clergyman who is affiliated with the Synod to which he belongs and the theological views of which he deems of such controlling importance.

The plaintiffs objected by demurrer to the sufficiency of the supplemental pleadings which set up the doings of the meeting of 1905, and later, after pleading over, to the competency of the evidence offered in their support. These objections were all properly overruled. In equitable proceedings, any events occurring after their institution may be pleaded and proved which go to show where the equity of the case lies at the time of the final hearing. *Woodbridge* v. *Pratt & Whitney Co.*, 69 Conn. 304, 334.

There is no error.

In this opinion the other judges concurred.