SCHUMACHER et al., Respondents v. GIEDT, et al., Appellants

(112 N.W.2d 898)

(File No. 9927. Opinion filed January 16, 1962)

**Agor, Bantz, Siegel & Barnett,** Aberdeen, for Defendants and Appellants.

**Campbell, Voas & Richardson,** Aberdeen, for Plaintiffs and Respondents.

RENTTO, P.J. This action arose out of a controversy between two factions of a church congregation and involves the possession and use of its property valued at $150,000.

St. John's Evangelical Lutheran Church of Bowdle, South Dakota, established in 1888 is a congregational type of church, owing no allegiance or subservience to any hierarchy. In 1902 it affiliated with the Minnesota Synod of the Lutheran Church. When that Synod merged with the Wisconsin Synod in 1919 it became affiliated with the latter group, which affiliation it has since maintained. In 1927 Rev. Paul G. Albrecht, an ordained minister of the Lutheran Church in the Wisconsin Synod, was called as its pastor and was serving in that capacity when the difficulty which caused this litigation developed.

Historically there has been an association or relationship between the Wisconsin Synod and the Missouri

Synod of the Lutheran Church. In late years a group of ministers affiliated with the Wisconsin Synod felt that there had been a departure from fundamental doctrine with the Missouri Synod and because of this advocated that the Wisconsin Synod should not continue in fellowship with the Missouri Synod. They were instrumental in organizing a new proposed church of the Lutheran confession into which they hoped to take their respective congregations. Pastor Albrecht was one of this group. This resulted in a severance of his affiliation with the Wisconsin Synod.

Thereafter St. John's congregation divided into two factions—those supporting the pastor in disassociating from the Wisconsin Synod and those desiring to continue the affiliation. After this difference appeared a resolution of the congregation was adopted to the effect that the church should stay with the Wisconsin Synod "with no strings attached." Rev. K. G. Sievert was then appointed interim pastor for the faction in sympathy with the Wisconsin Synod by the president of the Dakota-Montana District of that Synod. Litigation ensued which determined that the resolution referred to did not terminate the duties of Pastor Albrecht. As observed by the judge who tried this case it resulted in a church officially affiliated with the Wisconsin Synod but served by a pastor not affiliated with that Synod. As indicated by some of the theological witnesses, in that situation the pastor is unable to perform the duties of his pastorate because he is not in fellowship with his congregation.

On May 1, 1960, the regular quarterly congregational meeting of the church was held during the half-hour period between the English and German language services. Members from both factions were present. The actions taken by this meeting are in dispute. Two sets of minutes of the meeting were received in evidence. After some purely formal matters were disposed of a motion was made to adjourn the meeting until 8 o'clock that evening. The minutes and the testimony of those supporting the pastor indicate that it carried unanimously. The

minutes and the testimony of the other faction are to the effect that an adjournment was not voted. At this stage of the meeting the supporters of the pastor walked out and the other group remained and continued the meeting. They passed a resolution removing the pastor and reaffirmed affiliation with the Wisconsin Synod.

This action was then commenced by the faction opposed to Rev. Albrecht seeking to enjoin him from conducting services as pastor of the church and from occupying any of its premises or other property and requiring him to deliver all church books, records and other property to its duly constituted officers. In addition they asked that the other defendants, the members of the church council, be enjoined from permitting Rev. Albrecht to occupy the church premises or any of its real property and conducting services therein. It also sought to enjoin them from paying him salary or expense money and from interfering with the services conducted by the interim pastor and from refusing to recognize the affiliation of the church with the Wisconsin Synod.

From a judgment in favor of the plaintiffs, Rev. Albrecht and six of the nine council members appeal. The first issue raised by their assignments of error is whether relief by injunction is available in this type of case. They claim it is not and cite SDC 1960 Supp. 37.4302(6), which provides that: "An injunction cannot be granted: * * * To prevent the exercise of a public or private office in a lawful manner, by the person in possession", and urge upon us the general rule that injunction is not a proper remedy to determine the right to an office because of the availability of an adequate legal remedy in the nature of quo warranto.

These contentions may well be sound when the dispute involves only the right to an office but that question is not here presented. In addition to the right to an office this case also involves property and civil rights. These the courts will protect. Presbytery of Huron v. Gordon, 68 S.D. 228, 300 N.W. 33. See also 8 A.L.R. 105,

70 A.L.R. 75. In the Gordon case it was done by injunction which is the traditional remedy used by equity to settle such rights when a congregation develops discordant factions. Duessel v. Proch, 78 Conn. 343, 62 A. 152, 3 L.R.A.,N.S., 854; 76 C.J.S. Religious Societies § 73; 45 Am.Jur., Religious Societies, § 64. The fact that a right to an office is incidentally involved does not defeat the jurisdiction of equity to administer relief by injunction.

In Hurley v. Board of Mississippi Levee Commissioners, 76 Miss. 141, 23 So. 580, it is written:

> "The mere fact that incidentally to the determination of the main question, whether the citizen's property is being taken without due process of law, it becomes necessary for the court to decide, not for the purpose of entitling either to the office, but merely for the purposes of this suit, whether Jacobs or Aycock was the legal commissioner, in no way defeats the jurisdiction to administer the equitable relief,—the basis of the bill. Such decision, for the purpose of this suit, does not settle the right to the office in the sense that a judgment in a contested election case would at law, where the right to the office was the only thing to be settled."

See also Johnston v. Jones, 23 N.J.Eq. 216. To give SDC 1960 Supp. 37.4302(6) the construction contended for by the supporters of Rev. Albrecht "would render the statute to that extent unconstitutional as an attempt to deprive the circuit courts of this state of a jurisdiction conferred upon them by the State Constitution." Ewing v. Waddington, 62 S.D. 166, 252 N.W. 28. Accordingly we hold that injunction is a proper remedy.

Concerning the meeting on May 1, 1960, the court found that the motion to adjourn did not legally carry and that the meeting was not adjourned. It further found that those remaining at the meeting, constituting a majority of the voting members of the church, selected

an acting presiding officer and secretary and unanimously discharged Paul G. Albrecht as pastor and reaffirmed affiliation of the church with the Wisconsin Synod and that these actions were official actions of the congregation. Appellants claim that these findings are not warranted.

■ One prong of their attack is that the members of the faction opposed to Rev. Albrecht were not members of St. John's congregation at the time of the meeting. They bottom this contention on the premise that for some time prior thereto they were holding their own services under another pastor in another church and for all religious purposes had separated themselves from the congregation. of St. John's after the controversy between the two factions arose. Appellants assert that because of such conduct the members of this group automatically and without action by the congregation lost their membership in the church. We do not agree they can be read out of their church in that manner. They probably could not have acted otherwise as a matter of conscience.

Admittedly all of the group opposed to the pastor were qualified voting members when this difficulty began and had been such for a long time before that. In Art. VII of the Church Constitution it is provided that:

"Members excommunicated according to Matthew 18, 15-20, such as excommunicate themselves by evading Matthew 18, 15-20, and such as by adherence to false doctrine or by removal sever their connection with the congregation, give up all their rights in the congregation and its property.

"Such members as for reasons that are justified by the Word of God ask for their dismissal shall be peaceably dismissed by the congregation. Such dismissed members relinquish all their rights in the congregation and its property."

The constitution and the bylaws nowhere specifically provide a procedure for determining whether a member has lost his membership because of his conduct or beliefs. However, we think it must be implied from this article of the constitution and Art. I of the Bylaws concerning the reception of members and Art. V thereof governing the order of business that it is for the congregation to make this determination. See Gray v. Christian Society, 137 Mass. 329, 50 Am. Rep. 310; Blauert v. Schupmann, 241 Minn. 428, 63 N.W.2d 578. Since the membership of the members of this group had not been terminated by the congregation they were still members when the meeting in question was held. That each faction considered the individuals in the other as members of the church during this controversy is apparent from a stipulation filed in their previous litigation.

■ The other prong of their attack on these findings is that the meeting was adjourned before those opposed to the pastor took action to remove him and reaffirm the congregation's affiliation with the Wisconsin Synod. On this issue the evidence is contradictory. It was for the trial court to resolve this dispute which it did by accepting the version of those opposed to the pastor. Their evidence is ample support for the finding. It is also impliedly supported by the admission of one of the witnesses for the appellants that the motion was made only after they realized that they were outnumbered by the opposition, a strategy agreed to before the meeting. Significant also is the fact that no meeting was held that evening in conformity with the motion to adjourn.

■ Appellants also contend that the congregation does not have authority to remove a pastor, or in the alternative, that if it does have authority no proper cause for such action is present in this case. The constitution and the bylaws do not state specifically how a pastor is to be discharged. However, Art. IX of the Constitution provides that: "The congregation has the exclusive right to call and elect pastors, teachers, and other offi-

cers." It also contains this note: "In case of a vacancy in the position of the pastor or teacher the congregation shall notify the president of the local district of the Synod for the purpose that the latter may assist in temporarily filling the vacancy and in giving his good council in regard to the calling of a new pastor or teacher." In Art. XVI concerning organizations it is written that: "All authority is vested in the local congregation."

The call by which Rev. Albrecht was employed as pastor did not specify any period of time for which his services were engaged. He asserts that it was permanent in nature. With this we do not agree. It seems to us that his employment was a terminable one. Blauert v. Schupmann, supra. Since the congregation has the right to employ the pastor, we think it must be implied from the constitution of this church that it has also the power to discharge him.

■ Concerning removal from office Art. X of the Constitution states:

> "If any one holding an office in the congregation wilfully neglects his duty, and upon due admonition does not amend, the church in such case has the right, and eventually the duty, to remove him from office and elect another to take his place.

> "Sufficient and urgent causes for removing a pastor or teacher are persistent adherence to false doctrine, scandalous life, wilful neglect of duty, or established inability to perform the duties of his office."

Appellants argue that since none of these grounds were specified or established against Rev. Albrecht his dismissal is ineffective. In our view whether one of these grounds existed may not be inquired into by the civil courts.

■ ■ The parties agree that this church has a congregational form of government with no ecclesiastical hierarchy to review or revise decisions made within the church. Consequently all ecclesiastical remedies rest with the congregation itself. The general rule seems to be that decisions of church tribunals on ecclesiastical matters are binding and conclusive and not reviewable by the civil courts. Presbytery of Huron v. Gordon, supra. Our only concern is that the ajudication be made by an ecclesiastical tribunal properly constituted. This determination is not an ecclesiastical matter but the removal of a pastor and the grounds therefor are. Briscoe v. Williams, Mo.App., 192 S.W.2d 643; Longmeyer v. Payne, Mo. App., 205 S.W.2d 263; Providence Baptist Church of San Francisco v. Superior Court, 40 Cal.2d 55, 251 P.2d 10; see also St. Vincent's Parish v. William Murphy, 83 Neb. 630, 120 N.W. 187, 35 L.R.A.,N.S., 921; 76 C.J.S. Religious Societies § 89; and 43 Cal.L.Rev. 322. Since this congregation has the power to discharge its pastor and in view of the fact that the May 1st meeting was properly convened and conducted, its decision to dispense with the services of Rev. Albrecht is binding on the civil courts.

Affirmed.

All the Judges concur.