Robert D. ORR, Frank Dixon, C. H. Peterson, Keith Kettering, Carol Reed and Phyllis Huss, Plaintiffs and Respondents,

v.

Richard F. KNEIP, Governor of the State of South Dakota, Vern Butler, Secretary of the Department of Natural Resources of the State of South Dakota, the Department of Natural Resources of the State of South Dakota, the South Dakota Conservancy District, the Board of Natural Resource Development of the Department of Natural Resources, Wesley Beaman, Neil Evans, Larry Green, Jake Muehl, James Schmulbach, Dr. James Sturdevant, and J. Harvey Glover, members of the Board of Natural Resource Development, Michael Madden, Director of the Oahe Conservancy Subdistrict, John Sieh, Director of the Oahe Conservancy Subdistrict, Leonard W. Naessig, Director of the Oahe Conservancy Subdistrict, Arnold Schurr, Director of the Oahe Conservancy Subdistrict, Siegfried Swanhorst, Director of the Oahe Conservancy Subdistrict, Glenn Overby, Director of the Oahe Conservancy Subdistrict, Douglas Beckett, Director of the Oahe Conservancy Subdistrict, and William Piper, Director of the Oahe Conservancy Subdistrict, Kenneth Marsh, Stephen Thorson and R. B. Hipple, Defendants,

and

Oahe Conservancy Subdistrict, Defendant and Appellant,

and

Edmunds County, a political subdivision of the State of South Dakota, Intervenor and Defendant,

and

Day County, a political subdivision of the State of South Dakota, Amicus Curiae,

and

Clark County, a political subdivision of the State of South Dakota,

Amicus Curiae,

and

**City of Huron, a Municipal Corporation
of the State of South Dakota,
Amicus Curiae.**

**No. 12303.**

Supreme Court of South Dakota.

Dec. 30, 1977.

William J. Srstka of Duncan, Olinger, Srstka, Maher & Lovald, Pierre, for plaintiffs and respondents.

Donald Foreman, Asst. Atty. Gen., Pierre, for all defendants; William J. Janklow, Atty. Gen., Pierre, on brief.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, Tom P. May, Aberdeen, for defendant and appellant Oahe Conservancy Subdistrict.

Michael T. Hogan, Ipswich, for intervenor and defendant Edmunds County.

Leon J. Vander Linden, Webster, for amicus curiae Day County.

D. G. Syvertson, Clark, for amicus curiae Clark County.

Glen A. Severson, Huron, for amicus curiae City of Huron.

PER CURIAM.

This is an appeal from a temporary injunction. We vacate the injunction and remand the case for trial.

Appellant Oahe Conservancy Subdistrict (hereinafter "the subdistrict") encompasses 15½ counties in the north central portion of the state. The subdistrict was formed by a vote of the electors within the area encompassed by the subdistrict in the general election held in November of 1960. On January 8, 1969, a master contract was entered into between the subdistrict and the

United States, under the terms of which the United States, acting through the Bureau of Reclamation of the Department of Interior, agreed to construct the Oahe Unit (hereinafter "the project") of the Missouri River Basin Project and to supply water to the area lying within the subdistrict for irrigation and other beneficial uses. For a more complete statement of the history of the subdistrict and the project and of the terms of the master contract, see *In re Oahe Conservancy Subdistrict*, 85 S.D. 443, 185 N.W.2d 682. See generally SDCL 46–18 for the statutes authorizing the creation of the subdistrict.

The subdistrict as created by the 1960 election is governed by a board of directors consisting of 11 members. SDCL 46–18–13. Two of the members are elected by the voters residing in the municipalities lying within the subdistrict. The rural portion of the subdistrict is divided into nine voting areas, each of which elects one member to the board. The 1970 census figures show that 89,600 persons reside in the municipalities within the subdistrict and that 48,650 persons reside in the rural areas of the subdistrict. Thus, the two directors elected from the municipal areas represent 64.8% of the population of the subdistrict but have only 18.18% of the vote on the board, whereas the nine directors elected from the rural areas represent 35.18% of the total population of the subdistrict and have 81.81% of the total vote on the board.

Plaintiffs are residents of the subdistrict. Several of them own land that is within the area proposed to be irrigated by the water that will be channeled to the irrigable areas by a system of canals to be constructed in accordance with the master contract. Plaintiffs allege in their complaint that the apportionment of the membership on the board of directors is in violation of the provisions of the United States Constitution and the South Dakota Constitution.

The trial court concluded that the subdistrict was a governmental entity that must comply with the constitutional requirement of one person, one vote, as mandated by the United States Supreme Court and by this Court. See, e. g., *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; *Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45; *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523; *Bailey v. Jones*, 81 S.D. 617, 139 N.W.2d 385. The trial court then issued a temporary injunction that temporarily weighted the votes of the directors in the following manner:

"Director for Area 1—three votes
Director for Area 2—six votes
Director for Area 3—five votes
Director for Area 4—three votes
Director for Area 5—three votes
Director for Area 6—four votes
Director for Area 7—two votes
Director for Area 8—three votes
Director for Area 9—six votes
Each municipal director—32.5 votes."

The injunction further provided that:

"The above temporary weighing formula will apply only when the Oahe Conservancy Sub-District Board of Directors is voting on matters directly relating to the Oahe Project and shall not apply to any other matters including, but not limited to, other projects or decisions that the Board must make in meeting the day-to-day functions of the Sub-District."

Appellant challenges the temporary injunction on a number of grounds. Because we conclude that the injunction must be vacated in the absence of any finding that the board has acted illegally and in the absence of any determination that a plan of reapportionment cannot or will not be effectuated by some other non-judicial body, we do not reach the merits of appellant's remaining contentions.

SDCL 21–8–2 provides in part that:
"An injunction cannot be granted:

.    .    .    .    .

(6) To prevent the exercise of a public or private office in a lawful manner, by the person in possession;"

In *State ex rel Cranmer v. Thorson*, 9 S.D. 149, 68 N.W. 202, and in *State ex rel Adams v. Herreid*, 10 S.D. 16, 71 N.W. 319, this Court recognized the general rule embodied in SDCL 21–8–2(6) that injunctions

should not be issued to prevent the lawful exercise of a public office. It is true that we have held that the remedy of injunction is available to protect property and civil rights even when the question of the right to an office is involved, *Schumacher v. Giedt,* 79 S.D. 421, 112 N.W.2d 898, but that is not the case before us. The board as presently apportioned has functioned for some seventeen years. In the sense that there were any legal deficiencies in the election process itself, no one questions the fact that the present directors were apparently duly elected to their positions. The fact that the attack upon the constitutionality of the apportionment of the subdistrict comes long after the one person, one vote principle was first applied to local subdivisions of government may not detract from the legal merits of the challenge to the constitutionality of the present apportionment, but it does tend to dispel any implication that the composition of the present board and the acts of the incumbent directors are so tainted with illegality as to justify the granting of the extraordinary relief of weighting the votes of the directors during the pendency of the principal action. There is nothing in the trial court's findings that demonstrates that the board has acted illegally with respect to its obligations under the master contract with the United States. Although it may very well be that the board as presently constituted appears to oppose the continued funding of the project in its present form, that is a far cry from a finding that the board is acting illegally. However obvious it may be to some that the completion of the project as originally envisaged is a matter of the utmost urgency, a finding that those directors who presently command a majority of the votes on the board may have a different opinion concerning the continued validity of the original project is not a sufficient ground upon which to base the injunction in question.

■ Likewise, although it may very well be that the trial court will determine after a full trial on the merits that the board as presently constituted is unconstitutionally malapportioned and that some plan of reapportionment must be implemented, no warrant exists for the extraordinary temporary relief granted by the trial court in the present posture of the case.[1] In a case involving malapportionment nearly as striking as that alleged in the instant case, this Court deferred imposing a judicially conceived plan of reapportionment pending resolution of the matter in the first instance by legislative action. See *Bailey v. Jones,* supra. As the United States Supreme Court has said, "[R]eapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court." *Chapman v. Meier,* 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766, 785. See also *Wise v. Lipscomb,* —— U.S. ——, 98 S.Ct. 15, 54 L.Ed.2d 41 (Powell, Circuit Justice, 1977). Likewise, in accordance with our disposition in *Bailey v. Jones,* supra, we conclude that the trial court should stay its hand in imposing any court-ordered plan of reapportionment until it has been determined that a plan of reapportionment cannot or will not be enacted by some other non-judicial body. Whether the board itself, the Department of Natural Resource Development,[2] or the legislature has the authority

1. We intimate no opinion concerning the merits of appellant's contention that the subdistrict and the board are not subject to the requirements of the one person, one vote principle. See, e. g., *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659; *Associated Enterprises, Inc. v. Toltec Watershed Improvement District,* 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675; *Town of Lockport v. Citizens for Community Action,* 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313.

2. SDCL 46–18–13 provides:
   "The district board shall fix the number not to exceed eleven members and shall fix the qualifications of the subdistrict board to effect an equitable representation of all areas within the subdistrict. Each candidate for director shall be an owner of real property in the director area he is to represent if elected."
   The duties of the board of directors of the South Dakota Conservancy District, under the sponsorship of which the subdistrict was originally formed, see SDCL 46–17–1, were trans-

to reapportion the subdistrict, assuming that such reapportionment is found to be constitutionally required, is a matter for the trial court to determine after a trial upon the merits.[3]

Accordingly, the temporary injunction appealed from is vacated and the case is remanded to the circuit court for trial.

All the Justices concur.

---

ferred to the Department of Natural Resource Development in 1973. See SDCL 1–40–9. The allocation of functions between the subdistrict and the department is the same as it was between the subdistrict and the Conservancy District prior to the pre-1973 change in the law. SDCL 46–18–1.1.

3. We do not mean to imply, of course, that reapportionment of the subdistrict by one of these non-judicial bodies must await the ultimate judicial determination of this case.