RALPH E. SCHMIEDESKAMP, for Himself and as Representative of all Persons Similarly Interested, Plaintiff and Respondent, v. BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. 24, Yellowstone County, Defendant and Appellant.

No. 9422.
Submitted December 14, 1954. Decided January 4, 1955.
278 Pac. (2d) 584.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Robert L. Word, Jr., Sp. Asst. Atty. Gen., Mr. Arnold A. Berger, Co. Atty., Billings, for appellant.

Messrs. Sandall & Moses, Mr. Charles F. Moses, Billings, for respondent.

Mr. Word and Mr. Moses argued orally.

MR. CHIEF JUSTICE ADAIR:

Appeal from an order refusing to dissolve an injunction.

*Election.* On April 4, 1953, an election was held in public school district No. 24 in Yellowstone County, at which was submitted to the electors of the district the question of issuing bonds in the sum of $365,000 for the purpose of providing funds for the erection of one central elementary school building in such district.

More than 40% of the qualified registered electors residing in the district voted at the election at which 253 electors voted for the bond issue while 241 electors voted against the issue. Thus did the bond issue carry by a dozen votes.

*Injunction.* Acting pursuant to the authority so conferred upon it by such vote the board of trustees of the district passed a resolution offering the bonds for sale but before the proposed sale could be effected, the plaintiff, a qualified taxpayer of the district, commenced this suit against the defendant board of trustees, obtaining and causing to be served therein a show cause and restraining order enjoining the sale. In addition to seeking a restraining order and injunction the plaintiff also sought to have both the defendant school board and the district court rescind and declare null and void the bond election so held.

*Complaint.* In the third, fourth, fifth and sixth paragraphs of his duly verified complaint the plaintiff made the following averments of fact, viz.: That more than 20% of the qualified registered electors residing within the school district signed and filed with the defendant school board their petition for the election to authorize a $365,000 bond issue to provide funds for the erection of a central elementary school building in lots 4, 5, 6 and 7 in block 29, original townsite of Worden in such district; that at a regular meeting of the defendant school board the petition was approved and a resolution adopted calling for such

bond election to be held on April 4, 1953; that thereafter notice of the election was duly posted and published according to law; that more than 40% of the qualified electors voted at the election; that 253 electors voted for said bond issue and 241 electors voted against the issue; that following the election the defendant school board adopted a resolution to issue bonds; that the sale of the bonds has been or is being duly advertised and that the defendant school board will sell such bonds on May 25, 1953, unless enjoined from so doing.

To justify the relief which plaintiff seeks the complaint further avers: That the bond election so held "does not represent the will of the qualified voters in said school district No. 24 but that the election favoring the issue of such bonds was the result of mistake and misapprehension as to the facts" and that subsequent to such election petitions directed to the trustees of the school district were circulated among the electors of the district asking the defendant board to rescind the election and to call another election to determine the wishes of the electors which petitions were thereafter presented to the defendant board.

*Hearing.* At a hearing held on the show cause and restraining order issued upon the filing of the above complaint the defendant school board interposed a motion to dismiss the restraining order and injunction upon the grounds that there is no provision in the Codes or statutes for restraining or enjoining the sale of the school district bonds after the holding of a valid election at which the requisite number of electors voted for the issuance and sale thereof and upon the further grounds that there is no provision in the law for invalidating a school bond election for any of the reasons or grounds relied upon and advanced in the complaint.

At the above hearing the district court took defendant's motion to dismiss under advisement and then proceeded to hear the testimony of various witnesses produced by the plaintiff and also received in evidence various documents and exhibits. At that time and over the objections of the defendant board, the plaintiff

was allowed to introduce in evidence fifteen typewritten petitions to rescind, all made, circulated and signed subsequent to the holding of the bond election.

*Petitions for Election.* The heading on each of the fifteen petitions for the bond election to be held April 4, 1953 reads:

"We, the undersigned, being more than twenty per centum (20%) of the qualified registered electors and taxpayers upon property within the boundaries of this school district whose names appear on the last completed assessment roll for state, county and school district taxes, do hereby ask and petition that an election be called and held within and for this school district and that at such election the question be submitted to the qualified electors of the school district, who are taxpayers upon property therein, of whether or not the board of trustees of this school district shall be authorized to issue, negotiate, and sell coupon bonds of the school district in order to obtain funds for for the purpose of erecting one central elementary school building on lots 4, 5, 6 and 7 in Block 29, Original Townsite of Worden, Montana.

"We estimate the amount of bonds necessary to raise the funds required for this purpose to be Three hundred and sixty-five thousand Dollars ($365,000)."

*Affidavit of Circulator.* Attached to each of the said fifteen petitions is the affidavit of the circulator which, in part recites:

"That I am a qualified elector of School District No. 24 of Yellowstone County, State of Montana; that I personally circulated the foregoing 'Petition for School District Bond Election' to which this affidavit is attached; that all of the ——— signatures appearing on such petition are the genuine signatures of the persons whose names appear thereon; and that the signers knew the contents of the petition at the time of signing the same."

*Election Notice.* The notice of the bond election so duly posted and published prior to the holding of such election states that an election "will be held on the 4th day of April, 1953 * * * for the purpose of voting upon the question of whether or not

the Board of School Trustees shall be authorized to issue and sell bonds of the said school district in the amount of Three Hundred and Sixty-five Thousand Dollars ($365,000.00) bearing interest at a rate not exceeding (6%) per annum, payable semiannually, for the purpose of providing funds for the erection of one central elementary school building on lots 4, 5, 6 and 7 in Block 29, Original Townsite of Worden, Worden, Montana. * * * ''

It appears from the uncontroverted averments of fact set forth in plaintiff's complaint and from the evidence introduced at the hearing on the show cause and restraining order that: The original petition for the holding of the bond election,—the action of the defendant board thereon,—the notice of election and the canvass of the ballots cast at the election all were and are in strict conformity with the governing statutes, namely R. C. M. 1947, sections 75-3901 to 75-3946 and particularly sections 75-3908 to 75-3914.

We find no provision of the written law of this state that accords to the electors of a school district the right to petition either the school board or the courts to set aside or rescind a valid bond election simply because some of the electors may desire another election to vote on the question already favorably voted upon and carried, especially where, as here, no fraud is either alleged or shown in the conduct of the election already held.

Both the appellant and the respondent have cited the case of Independent School District No. 68, Faribault County v. Rosenow, 185 Minn. 261, 240 N. W. 649, 650, 79 A. L. R. 434. There the court held that under the provisions of subdivisions 4 and 5 of section 2798 of the statutes of Minnesota, a second election could be had upon the application of qualified electors petitioning therefor and to rescind a bond election already held and carried.

In construing the above subdivisions of the Minnesota statute the court said:

''It may be assumed for present purposes, as argued for plaintiff's, that, ordinarily, once a municipality such as a school dis-

trict, by vote of its electors, has authorized the issue of bonds, it cannot rescind that action by a subsequent election called for that purpose. That rule may be modified or wholly abrogated by statute. In its application to this case, we think it has been. * * * Under Mason's Minn. St. 1927, sec. 2798, the voters, regularly convened in a school meeting, may (subdivision 4) designate a schoolhouse site and provide for the erection of a building thereon, and (subdivision 5) may 'repeal and modify their proceedings from time to time.' There is nothing in the context modifying or limiting that power to 'repeal and modify' or creating exceptions therefrom.

''We hold therefore that the voters of a school district may, in properly called meeting, rescind the action taken at an earlier election authorizing a bond issue, provided, of course, that the bonds have not been issued in such fashion as to bind the district contractually and beyond its power to withdraw.''

It is evident that under a statute like that of Montana the Minnesota Court would have held that the first election could not be rescinded by a subsequent petition and election presenting the same question.

Both the appellant and the respondent herein also cite the Texas case (Court of Civil Appeals) of Orr v. Marrs, 47 S. W. (2d) 440, 442, which holds that under the provisions of the Texas statute a second bond election could not be held. There the court said:

''The statute had expressly provided that a bond issue shall be authorized by expression of the popular will of the taxpaying voters given only by an election, as prescribed by law, and duly called for the purpose. By its terms this method of proceeding to obtain a bond issue is exclusive. And having once expressed their will as provided by law in assent of a bond issue, the taxpaying voters are not clothed with authority of any statutory provision to rescind that vote and annul the bond issue, although the bonds be not certified nor contracted to be sold. Neither is there any provision of law for taking such action by petition signed by the taxpaying voters. After the will of the

voters shall have been expressed and ascertained as provided by the law by an election, nothing remains, under the terms of the statute, but to carry it into effect. It is fundamental that voters of a district can only exercise such powers as are conferred by statute, either expressly or by implication. All powers not expressly or by implication conferred are excluded. The power to rescind the former vote for the bond issue not being expressly given by the statute, it may not be, it is believed, reasonably implied. The power to vote on a bond issue implies the power to vote against it, but not to vote to rescind it after it has been regularly authorized. * * *

"The Legislature alone can confer authority to the people of the district to revoke the bond issue. The bonds cannot be revoked or canceled by any agency unless the power to do so is conferred by legislative authority, and any doubt as to the existence of such power is, under well-established principles, resolved against its existence." Thereafter an application made to the Supreme Court of Texas for a writ of error was by that court denied. See Orr v. Marrs, 122 Tex. 53, 52 S. W. (2d) 53.

In People ex rel. Illinois Midland Ry. Co. v. Supervisors and Clerk of Town of Waynesville, 88 Ill. 469, the court said: "As a general rule, where the General Assembly confers a power, and the persons upon whom it is conferred act under it, the power is exhausted unless power is given to act again under the same authority. It is true that an election to change the terms of a prior vote is not in terms prohibited by the charter, but when it is remembered that it is only by virtue of an express power conferred by the General Assembly that these municipal bodies can vote for these subscriptions, we would rather look for an express power to vote to make the change, than to find it expressly prohibited. And if the second vote of the people to change the conditions previously annexed was without legislative sanction, then this election was *ultra vires,* and such act would be void."

In McNair v. School District, 87 Mont. 423, 288 Pac. 188, 189, 69 A. L. R. 866, this court said: "The board of trustees * * * constitutes the board of directors and managing officers of the

corporation, and may exercise *only those powers expressly conferred upon them by statute* and such as are necessarily implied in the exercise of those expressly conferred. The statute granting power must be regarded both as a grant and *a limitation upon the powers of the board.*" Emphasis supplied.

In Nichols v. School District, 87 Mont. 181, 188, 287 Pac. 624, 628, this court quoted the following with approval from a Michigan case, Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N. W. 1013, L. R. A. 1918E, 552: " 'Our duty is not to enact, but to expound the law; not to legislate, but to construe legislation, to apply the law as we find it, and to maintain its integrity as it has been written by a co-ordinate branch of the state government.' " Also see Chmielewska v. Butte & Superior Min. Co., 81 Mont. 36, 261 Pac. 616.

In 64 C. J. S., Muncipal Corporations, sec. 1929c, page 552, it is said: "The defeat of a proposition to issue bonds does not prevent a second submission of the proposition, whereas a proposition to issue bonds which has been adopted by the voters ordinarily cannot be resubmitted in the absence of statutory authority."

In 15 McQuillin on Municipal Corporations, 3rd Ed., sec. 40.18, page 288, it is said: "If the vote is in favor of the proposition submitted as incurring an indebtedness, it is final and conclusive * * * ". Several cases are cited in support of this statement including Commonwealth Public Service Co. of Montana v. City of Deer Lodge, 96 Mont. 48, 29 Pac. (2d) 667, and Lepley v. City of Fort Benton, 51 Mont. 551, 154 Pac. 710. Also see Hendrickson v. Powell County, 112 Mont. 1, 112 Pac. (2d) 199; Sacramento County v. Stephens, 11 Cal. App. (2d) 110, 53 Pac. (2d) 197; Oversteet v. School District, 193 Okl. 71, 141 Pac. (2d) 265.

Here the record shows a strict compliance with the Montana law authorizing the issuance of school district bonds and the bond election authorizing such bonds is final and conclusive against dissatisfied electors petitioning for a second election upon the identical question so legally submitted at and determined by the first election. Accordingly the order of the district court from

which this appeal was taken being the order of December 31, 1953, continuing the earlier order of May 15, 1953, whereby the defendant school board was restrained and enjoined from either issuing or selling the bonds so authorized at and by the election held, is reversed and set aside and such board is authorized to proceed with the issuance and sale of said bonds without further let or hindrance. It is so ordered.

MR. JUSTICES ANGSTMAN, ANDERSON, and BOTTOMLY, concur.