BAILEY, Respondent v. JONES et al., Appellants

(139 N.W.2d 385)

(File No. 10280. Opinion filed January 13, 1966)

**Blaine Simons,** Sioux Falls, for defendants and appellants.

**Mead Bailey** of **Christopherson, Bailin, Wilds & Bailey,** Sioux Falls, for plaintiff and respondent.

BIEGELMEIER, J. This appeal presents the question whether the "one person, one vote" doctrine applies to the election of county commissioners. The facts are not in dispute. The population of Minnehaha County is 86,575 of which 65,466 reside in the City of Sioux Falls and 21,109 outside the city. The county has been divided into five commissioner districts pursuant to SDC 12.0608, two of which comprise the city; the other three comprise the balance of the county. The five defendants are the present acting county commissioners. Under SDC 12.06 a county commissioner must be a resident elector of the district and his nomination and election "shall be by a vote of the electors of the district of which (he) is a resident elector". SDC 12.0602. Thus, two of the commissioners are elected by and represent 65,466 persons (32,733 each) from the city and the three outside the city are elected by and represent 21,109 persons (7,036 each). Finding this inequality in the districts and disproportionate rep-

resentation, the trial court held that part of SDC 12.0608[1] restricting the city to two commissioners denied the electors of Sioux Falls equal protection of the law and unconstitutional because in conflict with the 14th Amendment of the United States Constitution[2] and Sections 1, 2 and 19, Art. VI, of our State Constitution.[3] The defendant commissioners were permitted to function until March 15, 1966, and if by that time the legislature has not acted to permit a constitutional apportionment or defendants have not so acted by their own initiative or by virtue of statutory amendment, all commissioner districts would be abolished and candidates for such offices nominated and elected in the 1966 elections to serve at large.

Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, held a claim under the Equal Protection Clause of the 14th Amendment challenging a state's malapportionment of seats in its legislature presented a justiciable controversy subject to adjudication in federal courts. In a series of opinions that followed the

---

1. SDC 12.0608—"It shall be the duty of the board of county commissioners * * * to change the boundaries of the commissioner districts * * * and it shall so divide and redistrict its county that each district may contain as near as may be within one hundred of the same number of votes, as shown by the official returns of the votes cast at the last election held prior to the date of the meeting mentioned herein at which election state and county officials were elected.

 "In such redistricting: no voting precinct shall be divided; no incorporated city shall be divided into more than two commissioner districts; in counties having only three commissioner districts, no city nor town shall comprise more than one commissioner district; in no case shall any one commissioner district in a county having five commissioner districts embrace an area of more than one-half of the area of any county."

2. 14th Amendment to U. S. Constitution: "* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

3. Art. VI, S. D. Constitution:

 § 1: "All men are born equally free and independent, and have certain inherent rights, among which are those of enjoying and defending life and liberty, of acquiring and protecting property and the pursuit of happiness. To secure these rights governments are instituted among men, deriving their just powers from the consent of the governed.

 § 2: "No person shall be deprived of life, liberty or property without due process of law. * * *

 § 19: "Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage. * * *"

 See also:

 § 26: "All political power is inherent in the people, and all free government is founded on their authority, and is instituted for their equal protection and benefit * * * And the state of South Dakota is an inseparable part of the American Union and the constitution of the United States is the supreme law of the land."

 § 4: The Enabling Act. (Act of February 22, 1889, Ch. 180, 25 Statutes at Large 676.) "The constitution (of South Dakota) shall * * * not be repugnant to the Constitution of the United States * * *". This would seem self-evident.

United States courts expanded that power and doctrine to require members of both legislative houses represent substantially the same number of people.[4]

The United States courts have jurisdiction of actions to enforce the "one person, one vote" standard under the 14th Amendment which was held applicable to the City Council of Baltimore, Md.,[5] and a New York County Board of Supervisors.[6] The latter upheld such jurisdiction; the former enjoined an election on a corrective apportionment resolution which it determined was constitutionally invalid discrimination.

The United States Supreme Court lays down the basic premise in Reynolds v. Sims, where it wrote: "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections.[7] * * * and each and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies."[8]

Two state courts of last resort, the Wisconsin Supreme Court in State ex rel. Sonneborn v. Sylvester[9] and New York Court of Appeals in Seaman v. Fedourich[10] have likewise held they had jurisdiction to consider, and on the merits declared the invalidity of the apportionment of a Wisconsin Board of County Commissioners and the Common Council of Binghamton, New York.

---

4. Reynolds v. Sims 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and four companion cases. These and later opinions are referred to and discussed in an article by Professor Weinstein, 65 Col.L.R. 21 and notes in 33 Geo.Wash.L.R. 1132 and 44 Neb.L.R. 850. See also cases cited and reviewed in 12 L.Ed.2d 1282 and Petuskey v. Clyde, 234 F.Supp. 960 (1964—D.C. Utah), a three-judge court for application of the doctrine.

5. Ellis v. Mayor and City Council of Baltimore, 234 F.Supp. 945 (D.C.Md. 1964, three-judge court).

6. Bianchi v. Griffing, 238 F.Supp. 997 (D.C.N.Y. Feb. 1, 1965, three-judge court). The exact date is given as it retained jurisdiction but withheld relief pending assumed corrective political action and preceded the state court opinions in Seaman v. Fedourich, Note 9, infra. The current cases are collected in the law review articles in Note 4, supra.

7. 377 U.S. at 554, 84 S.Ct. at 1377, 1378, 12 L.Ed.2d at 523.

8. 377 U.S. at 565, 84 S.Ct. at 1383, 12 L.Ed.2d at 529.

9. 26 Wis.2d 43, 132 N.W.2d 249—Jan. 5, 1965.

10. 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778—July 9, 1965. The lower court opinion reaching the same result is reported in 45 Misc.2d 940, 258 N.Y.S.2d 152.

These two courts based their conclusions[11] on both the 14th Amendment and their own state constitutional provisions which are similar to the 14th Amendment and to each other.

■ Functions of counties vary. Their general powers are referred to in notes in the George Washington and Columbia Law Reviews[12] as well as State ex rel. Sonneborn v. Sylvester.[13] That our county boards have similar governmental powers seems obvious. Among them are the authority to enact rural and airport zoning regulations; construct and repair bridges and highways; designate through or main highways and the speed thereon; establish and maintain public parks, county fairs, and free libraries; contribute to health centers; provide for assistance and deputies in county offices; generally supervise the fiscal affairs and levy taxes on all property in the county. Many of these powers are discretionary and some decisions may in practice be final. In effect they both manage and govern the counties.

■ ■ Boards of County Commissioners are representative of the people and by parity of reasoning the concepts of equal protection as delineated by, and in conformity with, the decisions of the United States Supreme Court applies to them. We conclude the "one person, one vote" doctrine announced by the United States Supreme Court construing the 14th Amendment applies to Boards of County Commissioners in South Dakota. The trial court was therefore correct in reaching the conclusion the restrictive provision of SDC 12.0608 was unconstitutional as violative of that doctrine.

■ ■ While this disposes of the appeal some contentions of appellants deserve mention. Appellants argue that as Sections 5, 6 and 7, Art. IX, of our State Constitution do not in terms require county commissioners to be elected, the legislature has

---

11. Such has been the result reached by several courts where this question was at issue. See Goldstein v. Rockefeller, 45 Misc.2d 778, 257 N.Y.S.2d 994; Brouwer v. Bronkema, Case No. 1855 (Circuit Court Kent County, Mich., Sept. 11, 1964). While these two opinions are of lower trial courts they have been variously cited and quoted from with apparent approval, by the highest appellate courts. Other opinions appear in the cases cited.

12. 33 Geo.Wash.L.R. 1134, Notes 23-27; 65 Col.L.R. 28, Note 28.

13. 26 Wis.2d 43, 132 N.W.2d 249, 256.

plenary power with respect to county government and it could provide for appointment of the commissioners. The answer to this is when under the plenary power the right to vote is provided for it must be on the one person, one vote principle, and when the latter is the case, to be a valid vote it must be a vote that will insure equal representation. State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d at 255, 256. Political subdivisions of states—such as counties and cities are not sovereign entities; they are subordinate governmental instrumentalities created by the state to assist in carrying out state governmental functions.[14] Reynolds v. Sims, supra.

 Another point is made that the South Dakota Constitution provides the people with the relief of initiative and referendum and appellants' brief quotes Justice Clark's concurrence in Baker v. Carr for the reason Tennessee did not so provide. Whatever may have been the division of the court in that case, in Lucas v. Forty-Fourth General Assembly of The State of Colorado,[15] Mr. Justice Clark repeated that view in a dissent and was the only one who relied on it as the reason for denying relief. The majority opinion is to the effect that while a court might temporarily refrain from issuing an injunction to allow "resort to an available political remedy, such as initiative and referendum, individual constitutional rights cannot be deprived or denied judicial effectuation" for that reason. In holding an apportionment plan invalid even though it had been approved by a majority vote of the Colorado electors, the court wrote:

> "An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate * * *".[16]

It is a truism that a citizen's constitutional rights cannot be infringed simply because a majority of the people choose it to be.[17]

---

14. The history and development of the New York town-county form of government is related by Justice Hallows in State v. Sylvester, Note 8.

15. 377 U.S. 713, 742, 84 S.Ct. 1459, 1476, 12 L.Ed.2d 632, 650.

16. 377 U.S. at 736, 84 S.Ct. at 1473, 12 L.Ed.2d at 647.

17. 377 U.S. at 736, 84 S.Ct. at 1474, 12 L.Ed.2d at 647.

■ Some suggestion is made the discrimination is not invidious. The record shows the commissioners from inside the city represent 32,733 persons, those outside 7,036 persons, a ratio of over 4 to 1; that three commissioners representing a minority of 21,109 persons (24%) constitute a majority of the board and may outvote the other two who represent 65,466 persons (76%). These figures show invidious discrimination beyond discussion.[18]

Our court in Codington County v. Board of County Commissioners, 47 S.D. 520, 199 N.W. 594, set forth the formula under present SDC 12.0608 where it said if a city contained 1/5 of the population it should constitute one district and have one commissioner; if 2/5 of the population it should comprise two districts and have two commissioners; if 3/5 of the population, three commissioners and so on "until a single city might have four of the commissioners, or even possibly the whole five." The court then mentioned the limitation of a city or town to one commissioner of three or two of five, but as the trial court had required a redistricting of a city from one to two districts and the board had appealed, the limitation clause was not before the Supreme Court.

■ While courts of the United States have jurisdiction of this class of actions, a state court should not require its citizens to resort to those courts. State courts have jurisdiction to hear, indeed they are required to hear, and determine such actions whether a violation of the State Constitution or the laws and Constitution of the United States be at issue.[19]

Presiding Judge Rentto and Judge Biegelmeier are of the opinion that not only the 14th Amendment as construed by the United States Supreme Court, but the South Dakota Constitution likewise requires the same result and the court should also base its opinion thereon. Art I, Section 1, of the Wisconsin Constitution set out in Note 2 in 132 N.W.2d 252, is nearly word for word the same as Art. VI, Section 1, of our constitution. The

---

18. See Annotation 12 L.Ed.2d 1287 et seq.

19. Seaman v. Fedourich, 45 Misc.2d 940, 258 N.Y.S.2d 152, 154; and same case 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778, 782; State v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249, 256 and see Maryland Committee For Fair Representation v. Tawes, 377 U.S. 656, 674, 84 S.Ct. 1429, 1439, 12 L.Ed.2d 595, 607.

Wisconsin court in the Slyvester opinion stated their article was to be equated with the 14th Amendment. It is unnecessary for us to construe our Section 1, Art. VI, that broadly in this action. The import of similar New York constitutional provisions is the same. See Goldstein v. Rockefeller, 45 Misc.2d 778, 257 N.Y.S.2d 994, 1002, for these provisions. In order that elections "shall be free and equal", Art. VI, Section 19, and to conform to the requirement that "all free government is founded" on the authority of the people and is "instituted for their equal protection and benefit", Art. VI, Section 26, we conclude elections of county commissioners must accord with the "one person, one vote" doctrine. These phrases are but details or elaborations of the equal protection clause of our Art. VI, Section 1, which is substantially the same as the one the Wisconsin Supreme Court equated with the 14th Amendment. Only such an interpretation of our constitution could conform to that part of Art. VI, Section 1, which recites the governments instituted among men are those "deriving their just powers from the consent of the governed". This consent cannot be from "free and equal" elections where a citizen in one district has a vote equal to two, three or four in another. "A classification which discriminates geographically * * * deprives a citizen of his constitutional rights" the same as one which discriminates by reason of race, creed or color. Dyer v. Kazuhisa Ave, 138 F.Supp. 220, 236 (D.C. Hawaii, 1956).

▪ We now come to the disposition to be made of this appeal. As indicated, the trial court's judgment declaring the Board of Commissioners of Minnehaha County to be unconstitutionally apportioned must be and is affirmed. The granting of other relief is governed by equitable principles[20] and since the primary responsibility of apportionment rests with the legislature, corrective relief should be deferred to give it opportunity to enact a constitutionally valid apportionment or districting plan for the election of county commissioners and provide for orderly transition of the governmental powers to such commissioners. Until that time, to assure continuity of county government the present Board of County Commissioners shall continue to func-

---

20. WMAC, Inc. v. Lomenzo, 377 U.S. 633, 655, 84 S.Ct. 1418, 1429, 12 L.Ed.2d 568, 581; Maryland etc. v. Tawes, Note 19, supra.

tion. Commissioners whose terms expire in January 1967 shall be nominated and elected for the interim in accordance with presently existing laws unless legislation providing for nomination of county commissioners becomes effective prior thereto. The court below shall retain jurisdiction and entertain an application by interested parties for further and appropriate relief if by March 31, 1967 corrective legislation has not been enacted.

As so modified the judgment appealed from is affirmed.

All the Judges concur.