HANSON et al., Appellants v. HARRISBURG IND. SCH. DIST., Respondent

(190 N.W.2d 843)

(File No. 10892. Opinion filed October 21, 1971)

Sam W. Masten, Canton, for plaintiffs and appellants.

**Rudolph & Bogue, Richard Bogue,** Canton, for defendant and respondent.

WINANS, Judge.

The defendant is a school district in Lincoln County, South Dakota. It held three successive school bond elections, to wit, on June 24, 1969, February 3, 1970, and March 3, 1970. The plaintiffs are resident electors of the defendant school who bring this action to determine which, if any, of such elections are valid.

The first election was held on the question of the authorization of the issuance of $595,000 in bonds bearing interest at a rate not to exceed 6% per annum to be used to construct, furnish and equip an addition to the high school building of the school district. This election carried by more than 60% of the ballots cast upon such question, and was declared to have passed. The school district was advised through its marketing agent there was no market for twenty-year bonds drawing 6% interest. No attempt was made by the board to sell such bonds as had been authorized by this election.

The defendant school district called a second bond election for the issuance of bonds for the same purpose and for the same amount as the first bond election, but at an annual rate of interest not to exceed 8%, and "in lieu of issuing the bonds authorized for the same purpose at the election held June 24, 1969." The vote at this second election was 204 in favor and 157 against. Less than 60% of the ballots cast being in favor of issuing such bonds, the school district declared such bond election to have failed of passage.

The defendant school district called a third bond election for March 3, 1970, to authorize $625,000 in bonds for a like purpose, to bear interest at a rate not to exceed 8% and "in lieu of issuing the bonds authorized for the same purpose at the election held June 24, 1969." The official canvass of the ballots cast at this election shows 307 in favor, 186 against, with 2 spoiled or blank ballots, and having received more than the requisite 3/5ths favorable vote, the bond issue was declared to have passed. The

defendant then attempted to sell the bonds authorized by the third election. However, the action of the plaintiffs, questioning the validity of the authorization of such bonds, was commenced April 13, 1970, and the school district received no bids for the purchase of the bonds authorized at the third election.

The plaintiffs, as electors and taxpayers of the school district, ask that the defendants be enjoined and restrained from selling or offering to sell such bonds as were authorized by the election of March 3, 1970.

■ There are a number of questions presented for review by the assignments of error. We take up first that which concerns the second election. It has been noted the school district declared this bond election to have failed of the necessary number of votes, but more than 50% of the votes cast favored the bond issue. The question presented by the assignment is whether this 3/5ths requirement of SDCL 13-19-16 violates the equal protection clause of the United States Constitution, and Article VI, Section 19 of the South Dakota Constitution. This in effect raises the question of the one-man, one-vote rule as applied to bond elections. SDCL 13-19-16 in pertinent part provides, " * * * but if less than three-fifths of the ballots cast shall be in favor of issuing such bonds, then no further action shall be had and the question shall not again be submitted to a vote for one year thereafter, except for a different amount."

In the case of Bailey v. Jones, 1966, 81 S.D. 617, 139 N.W.2d 385, involving County Commissioner representation, which embraced the "one person, one vote" doctrine, we quoted with approval, " 'A classification which discriminates geographically * * * deprives a citizen of his constitutional rights the same as one which discriminates by reason of race, creed or color. Dyer v. Kazuhisa Ave, 138 F.Supp. 220, 236 (D.C. Hawaii, 1956)." However, it must be noted that the opinion is limited to the fact question before the Court, which was a geographical discrimination, and the Court's conclusion is "As indicated, the trial court's judgment declaring the Board of Commissioners of Minnehaha County to be unconstitutionally apportioned must be and is affirmed."

In a much earlier case, State ex rel. Buck v. Whorton, 1925, 48 S.D. 332, 204 N.W. 169, in construing § 4 of Article XIII of our Constitution, stated, "It clearly provides that no bonded indebtedness shall ever be incurred on less than a majority vote, but it does not provide that bonded indebtedness may be incurred on the vote of a mere majority."

Since the submission of this case to this Court, the United States Supreme Court has decided the identical issue made by plaintiffs adversely to their contention. Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed. 2d 273. In this quoted case the Court granted "certiorari to review a challenge to a 60% vote requirement to incur public debt as violative of the Fourteenth Amendment". The Court speaking through Chief Justice Burger, said,

"Wisely or not, the people of the State of West Virginia have long since resolved to remove from a simple majority vote the choice on certain decisions as to what indebtedness may be incurred and what taxes their children will bear.

We conclude that so long as such provisions do not discriminate against or authorize discrimination against any identifiable class they do not violate the Equal Protection Clause. We see no meaningful distinction between such absolute provisions on debt, changeable only by constitutional amendment, and provisions that legislative decisions on the same issues require more than a majority vote in the legislature. * * * "

It is our opinion that this cited United States Supreme Court decision in Gordon v. Lance supports the conclusion of this Court in the Bailey case, supra, and the State ex rel. Buck v. Whorton case, supra. We are of the opinion the School District correctly declared that such bond issue proposed in the second election failed of passage.

■ This now brings us to a review of the first and third bond elections, and the problems raised by plaintiffs concerning

them. The appellant by assignment questions the right of the defendant School Board to make no attempt to sell the bonds authorized at the first election, and instead to call for another election at a higher interest rate and for a larger bond authorization. The first election authorized the district to issue 6% bonds up to the amount of $595,000. The district board made no attempt to sell such bonds, on the advice from its expert bond advisor there was no market for them.

SDCL 13-19-16 in effect at the date of all of these bond elections provided in pertinent part:

"If three-fifths of all ballots cast upon such questions shall be in favor of issuing bonds, the school board, through its proper officers, shall forthwith proceed to issue bonds in accordance with such vote".

SDCL 13-19-20 reads as follows:

"When the issue of bonds is authorized the school board shall cause at least three weeks' notice to be published in a legal newspaper within the county and within the district, if there be one, stating the time when and the place where sealed bids for such bonds will be received and such bonds shall be sold to the highest bidder for not less than par."

We believe this to be clear. The legislature must have meant what it said, and the school board should have followed this mandate of the statute. The only evidence on market conditions was that given by the bond expert. However, the board did not follow the statute, and the question is what now is the result. We believe the answer to this is given in an old Iowa case, Hibbs v. Board of Directors, etc. of District Township of Adams, 110 Iowa 306, 81 N.W. 584, 48 L.R.A. 535. We quote from the Iowa case in part: "That it was the duty of the board to certify the tax voted at the 1897 meeting there can be no question. But it did not do so, and, before any tax was in fact certified or levied, the electors, at a regular meeting, and by a large majority, voted to rescind the order voting the tax", and again, "But it is

said that, as soon as the tax was voted by the electors, plaintiff and others, interested in securing the schoolhouse, became possessed of a vested right, which could not be interfered with by subsequent vote. Let us see what that right is. As has been stated, the board and its officers failed to certify the tax to the board of supervisors for levy and collection. Plaintiff's right was to bring action to compel them to do so   *   *   * ."

Our case differs on its facts from the Iowa case for the reason the third election was not in our opinion a rescinding of the first election. As a matter of fact the vote was in favor of issuing bonds for the same purpose as the first election, in a slightly larger amount and with an increase in the authorized interest rate. This was to assist in their salability. They were to be issued as a substitute for and in lieu of the bonds authorized by the first election. The residents of the district will obtain the same facility they originally voted for.

We also distinguish this case from Custer City v. Robinson, 1961, 79 S.D. 91, 108 N.W.2d 211. In the Custer City case after a special election in favor of issuing bonds the city issued general obligation bonds in the amount authorized and caused to be spread upon taxable property a tax sufficient to pay interest and principal when due; they had collected some taxes, had paid off some of the bonds, had paid for services of an architect and claims properly chargeable to the project for which the bonds had been issued. The proposition to be voted on was a rescission of its former vote for the construction of the Municipal Hospital. Under such circumstances this Court held, "We thus conclude that the power to rescind a vote authorizing a bond issue is not conferred upon a municipality or its electors. It cannot therefore be made the subject of an initiative measure."

In our case the electors confirmed the project in the third election as well as in the first. Also, no vested rights were asserted between the first and third elections. The Custer City case, supra, also found, "The right to rescind in the absence of statute a vote authorizing a bond issue where no vested rights have intervened has in some cases been upheld. The author of the above cited annotation states that most of the cases so holding

involve votes of town or school district meetings and concludes that they can probably be distinguished. We deem it unnecessary to discuss these cases. If they may be taken as authority for the principle that having the power to vote for a bond issue electors have the right by necessary implication to rescind the vote, they are at variance with the rule generally applicable."

The case of State ex. rel. Saylor v. Walt, City Auditor (Pier, et al., Interveners), 1938, 66 S.D. 14, 278 N.W. 12, is not in point with our instant case, but it is instructive. In Walt, supra, the electors of City of Huron had at the annual election approved a bond issue for the cost of the construction of a fully equipped auditorium, and the acquisition of land for a site upon which to construct the same. The governing body negotiated with the Federal Government for a grant of additional funds to aid in the construction and for a sale of its bonds. The government offered to purchase the bonds and to grant the city a large sum of money. The offer was made subject to certain terms and conditions, and was by the city accepted by resolution. Certain electors of the city filed their petition seeking to refer this resolution to the electors for approval or rejection. The Court said, "If the resolution in question dealt solely with the disposition of the issue of bonds authorized by the voters of the spring election, authorities would offer support for a contention that the Legislature did not intend to set up a machinery through which the electors might reconsider at a referendum election that which they had previously approved at a bond election. 43 C.J. p. 585, § 951." The Court, however, went along with the right to have the referendum election because as the Court held, "No discussion is required to demonstrate that the question which confronted the electorate at the spring election was a wholly different question than was before the governing body of the municipality as it considered the wisdom of accepting the October proposal of the government."

The Circuit Court, in its Memorandum Opinion, and in its Findings of Fact, found "That since the time of the election of June 24, 1969 there has been no market for the 6 per cent school bonds of said District authorized by said election and any at-

tempt to sell such bonds would have been futile". The only evidence offered at the trial level would support this finding, and we have no question of fraud or bad faith in this case.

While the bond marketing agent's testimony that there was no market for 6% tweny-year school bonds is not entirely satisfactory inasmuch as he had made no inquiry concerning the possibility of selling the bonds to any of the local banks in the Harrisburg area, we cannot say that the trial court's finding that there was no market for the bonds was clearly erroneous. There being no market for the bonds, the trial court was correct in holding that it would have been a futile act for the school district to have attempted to sell the bonds. Because the original bond proposal had, as a result of circumstances not within the control of the school board, ceased to exist as a basis for any action by the school board to construct the addition to the high school building, the voters were not voting to rescind anything at the subsequent elections.

It should be emphasized that there is nothing in the record to indicate that the members of the school district board were guilty of bad faith in not advertising for sealed bids on the original 6% bonds. If there were any hint that the board deliberately failed to follow the literal command of SDCL 13-19-20 as a strategem to circumvent the will of the voters who had approved the original bond issue, an entirely different question would be before us. There being no such evidence in the record, however, there was no legal impediment to the subsequent elections.

If there had been no first election held on June 24, 1969, and the election of March 3, 1970, had been the first bond election, no question would have been raised as to the right of the electors to bond for $625,000 at 8% interest. We do not think they lost that right because their first election did not provide marketable bonds. We hold that no question was submitted to the electors to rescind the authority given. The question presented to the voters in both first and third elections was whether bonds should be authorized for the purpose of providing funds to construct, furnish and equip an addition to the high school building

of the district. The amount of bonds and interest authorized is the only difference. . We have been unable to find a similar case. Where the language of rescission, or rescind, has been used to describe what has been done, cases are to be found on both sides of the issue. They can be distinguished in many instances as where a statute is involved or a vested right has obtained, or where neither a vested nor contractual right or a statute is involved. Denicore v. City of Burlington, 116 Vt. 138, 70 A.2d 582; Noble v. City of Lincoln, 1954, 158 Neb. 457, 63 N.W.2d 475, 68 A.L.R.2d 1041; State ex rel. Strenge v. Westling, 1964, 81 S.D. 34, 130 N.W.2d 109; Orr v. Marrs, 1932, Tex.Civ. App., 47 S.W.2d 440; Goedde v. Community Unit Sch. Dist. No. 7, Macoupin Co., 1959, 21 Ill.App. 2d 79, 157 N.E.2d 266.

▄ The plaintiffs' next contention is that the ballot used in the March 3, 1970, election contained two propositions not separately stated as required by SDCL 13-19-11. **"Separate submission of school bond propositions.** — Whenever the school board determines that two or more propositions for the issuance of bonds shall be submitted to the electors, each proposition shall be submitted separately, and if so treated and submitted, such purposes shall be printed upon one or more ballots as a separate proposition."

SDCL 13-19-12 in pertinent part is as follows:

"Land, buildings, additions, improvements and equipment at a single location constitute a single purpose."

The proposition submitted to the voters was whether they wanted to issue bonds, in lieu of those previously authorized for the purpose of improvements to the Harrisburg School District at a single location.

The ballot used in the third election reads as follows: "Shall the School Board of Harrisburg Independent School District, No. 91, of Lincoln County, South Dakota be authorized to issue general obligation bonds of the District in an amount not to exceed $625,000.00 bearing interest at a rate or rates not exceeding 8% per annum, and maturing serially within not to exceed 20 years

from their respective dates of issue, to provide funds to be used to construct, furnish and equip an addition to the high school building of the District, in lieu of issuing the bonds authorized for the same purpose at the election held June 24, 1969?

☐ For issuing bonds

☐ Against issuing bonds".

We believe a fair construction of SDCL 13-19-11 and 13-19-12 is that the word "proposition" referred to contemplates how the bonds are to be used. What for? What purpose? By their very terms these two statutes pertain to proposals to issue bonds. No two such proposals are involved in this case. The proposal as submitted did not violate the principle stated in 43 Am.Jur., Public Securities and Obligations, § 91 as follows, "The voters cannot be put into the position of being compelled to accept one purpose or proposition for which bonds are sought to be issued which they do not desire merely because it is coupled with another purpose or proposition which they do desire, or to reject a purpose or proposition which is satisfactory because it is coupled with another which is not." Nor in our opinion does such proposal do violence to our statutes.

In Julson v. City of Sioux Falls, 48 S.D. 452, 205 N.W. 43, cited by plaintiffs, the submission of a question "for the purpose of acquiring, or constructing, equipping, and operating a plant" for the production and transmission of electricity was held to be invalid in that it submitted to the voters a dual proposition. The Court held, "It is unquestioned law that the voter should have an opportunity really to express his opinion — that is, he should have an opportunity to vote separately upon the question of a bond issue for each separate, independent, and distinct contemplated purpose." The vote at the third election was upon one distinct purpose. For a further discussion as to propositions submitted at bond elections see the case of Kellams v. Compton, Mo., 206 S.W.2d 498, cited in 4 A.L.R.2d 612, and the annotation §§ 3 through 7 inclusive, at pages 621-633.

█ It is also contended by the plaintiff that defendant school district did not properly pass, record and publish a resolution of necessity calling for a bond election, and that such failure would void the proceedings to issue the bonds. In making this contention the plaintiff states that the published minutes (1) did not disclose the vote taken on the Resolution of Necessity, or that such vote was favorable, and (2) the Resolution of Necessity itself was not published.

SDCL 13-19-10 provides as follows: "An election upon the question of issuing bonds shall be called upon a resolution of the school board calling such election and declaring it necessary and expedient to issue bonds, which resolution shall be entered at length by the clerk on the minutes, signed by the president, and attested by the clerk · * * * ."

SDCL 13-8-27 requires the clerk of an independent school district board to keep an accurate journal of the proceedings of the board. SDCL 13-8-34 reads as follows: **"Approval and signing of minutes of independent district board.** — The school board of the independent district shall approve the minutes of every meeting of the board within forty-five days after such meeting. The presiding officer of the school board and the clerk or business manager shall sign the minutes of all regular and special meetings of the school board after they have been approved by the board."

SDCL 13-8-35 as amended, Session Laws of 1968, provides: "Within twenty days after such meeting of the school board of any school district, the board shall cause to be published in the official legal newspaper published within the district, or if there is none, in a newspaper serving such district, a full account of the unapproved proceedings of such meeting of the board * * * ."

The journal or minute book record kept by the clerk of the district was received in evidence as Exhibit 5. The minute book is made up of bound, numbered pages. At pages numbered 198 and 199 are the minutes of the board meeting held February 9, 1970, with all board members present. At this meeting and

as shown at page 199 appears the following record: "A motion by Reit, seconded by Poppinga to adopt a resolution of necessity for a special bond election to be held on Tuesday, March 3, 1970 in the high school gymnasium. (Original copy of said resolution attached to official minutes record of District)".

Between pages 198 and 199, or included with them, of the bound minutes record book are a number of loose-leaf pages which were identified at the trial and numbered A to L inclusive. These pages show the proceedings initiating the bond election of March 3, 1970, being numbered B to E inclusive. The heading of page number B is "Member Herman Reit introduced the following resolution and moved its adoption:" Then appears at length the instrument entitled "Resolution Declaring Necessity and Expediency of Issuance of Bonds, and Providing For Submission of The Question At A Special Election". This instrument states that it is necessary to borrow money by issuing general obligation bonds in an amount not exceeding $625,000 at a rate of interest not exceeding 8% per annum, and further it describes the necessity of substituting these bonds in lieu of bonds provided in the first election. All of these things are set forth in considerable detail. All members of the board voted in favor. The said resolution was declared duly passed and adopted and was signed by the President and attested by the School District Clerk, at page E.

Page A of the loose-leaf pages is the Affidavit of Posting of the Notice of the Special Election called for March 3, 1970. The posting was done on Feb. 10, 1970, in three public places, and the affidavit is signed and sworn to by the School District Clerk.

Exhibit 4 is the affidavit of publication of the minutes of the school board meeting held February 9, 1970, as published in the Sioux Valley News, the official newspaper, published in Canton, Lincoln County, South Dakota. The resolution of necessity as set forth in Exhibit B of the loose-leaf pages, being a part of Exhibit 5 above mentioned, was not published as a part of such minutes, nor is there set out in such minutes as published any record of the vote upon and the adoption of a resolution of necessity. The minutes as published show only the following as

to the third bond election: "A motion by Reit, seconded by Poppinga to adopt a resolution of necessity for a special bond election to be held on Tuesday, March 3, 1970 in the high school gymnasium. (Original copy of said resolution attached to official minutes record of District.)"

Exhibit 7 is an affidavit of publication of notice of special election to be held in the district on March 3, 1970, to vote upon the issuance of bonds. It was published in the Sioux Valley News for three successive weeks upon the following dates: February 12, 19 and 26.

Mrs. Eggers, the clerk of the school board, testified with reference to the loose-leaf pages as follows:

"Q   When these minutes were prepared the Board, of course, did not know who would make the motions and who would second them and who would vote for or against them?

A   When the forms were made up, is that what you mean?

Q   Yes.

A   No, they were acted on after we received these at the meeting.

Q   Did you add the action taken by the Board as it appears on the page?

A   Yes.

Q   That was after the meeting?

A   That was within the meeting, I mean.

Q   But in connection with the action taken as shown on page K, you added that to the form already provided?

A   Yes.

Q    These minutes or these papers or pages A to K were at the meeting and available for completion at that time?

A    Are you referring to the resolution of necessity?

Q    Yes.

A    They were looked over and acted on at the time of the meeting."

From this record which is not disputed we must find that the resolution of necessity was made by the board and acted on and voted on. However, it appears that it was not printed in full in a legal newspaper within the county. The publication did make reference to the resolution of necessity and gave notice that the original copy was attached to the official minutes record of the district. This, of course, is not a strict compliance with the statute governing publishing of the minutes, but we believe the evidence shows a substantial compliance with the statutory requirement that the "resolution shall be entered at length by the clerk on the minutes." Furthermore, a resolution of a school district becomes effective on passing without publication. SDCL 13-8-33 provides, "Assent of a majority of the members of the school board shall be required to take any official action as a school board. All official acts of a school board relative to motions or resolutions passed at board meetings become effective at the time of such passage unless otherwise expressly provided therein."

In Linden School District No. 24 v. Porter, 1964, N.D., 130 N. W.2d 76, the Court stated, "In passing on the sufficiency of the minutes kept by a school board of a common school district consideration should be given to the fact that ordinarily the members of such a board and its clerk are not experts in the field of keeping records of proceedings and that the meetings of such boards are to a large extent conducted informally. Such minutes will therefore not be given a technical construction and irregularities and informalities will be disregarded, where the minutes are sufficient to show the board's intention."

The judgment of the Circuit Court holding the election of February 3, 1970, to have failed of passage, and holding the election of March 3, 1970, to be valid and authorizing the sale of bonds as provided by such election in lieu of the bonds authorized at the June 24, 1969, election is hereby affirmed.

HANSON and WOLLMAN, JJ., concur.

BIEGELMEIER, P. J., dissents.

BIEGELMEIER, Presiding Judge (dissenting).

Three elections are involved here:

1. The first election, June 24, 1969, authorized issuance of $595,000 in 6% bonds which was passed by over 60% of the ballots. As a marketing agent stated there was no market for them, no attempt was made to sell them.

2. The second election, February 3, 1970, was for $595,000, the same amount, of 8% bonds and included a statement that it was "in lieu of issuing" the first bonds. It received a favorable vote of 204-157 which was over 50% but less than 60%, so the school district declared the election to have failed.

3. The third election, March 3, 1970, was for $625,000 of 8% bonds and also included the statement "in lieu of issuing" the first election bonds. The vote was 307 in favor and 186 against, a 60% majority and the bond issue was declared to have passed.

Neither the school district officers nor its electors had power to rescind a vote authorizing the bond issue. Custer City v. Robinson, 79 S.D. 91, 108 N.W.2d 211. Therefore, it appears to me that the first election was a valid one, and as of the date of the trial of this action and the law governing this appeal it stands as a valid election and was not rescinded by either the second or third election (SDCL 13-19-16, amended by Ch. 101, S.L. 1970, effective July 1, 1970, may affect later bond issues).

Further the question of submitting the bond issue question and the "in lieu" of the prior bonds raises another question. Assuming the district could issue the bonds and vote to cancel the prior elections, it would be submission of dual legal propositions which the court mentioned in Grabe v. Lamro Ind. Con. Sch. Dist., 53 S.D. 579, 221 N.W. 697, but found it unnecessary to consider. However, the board had the right to submit a bond issue to the electors but not to illegally include another proposition, that is, the cancellation or revocation of the prior issues. The Grabe v. Lamro opinion so held. That the "in lieu of" clause was another proposition is supported by the fact that dictionaries define "in lieu of" as "in place of" and "instead of" (American Heritage), and as "since he could not get this, he took that" (Webster's New International Dictionary, 2nd Ed.).

If a second election be permitted to change the interest rate, as here to "raise" it, then it would permit one to "lower" it to a rate known to make the bonds unsalable or to reduce the "amount" to a figure which would not carry out the planned improvement. The community would be faced with endless confusion. In Schmiedeskamp v. Board of Trustees of School Dist., 128 Mont. 493, 278 P.2d 584, 68 A.L.R.2d 1035, it was held that without a specific statutory act a second election could not be held to rescind a prior one that authorized a bond issue. Many cases from Minnesota, Illinois, etc. are cited.

The school board was not authorized to rely on the advice of a Minneapolis bond dealer that the 6% tax exempt bonds could not be sold. It was the duty of the school board, as directed in SDCL 13-19-20, to publish a notice of a time and place to receive sealed bids for the bonds so as to sell them to the highest bidder. That is what the legislature required the board to do. To quote Justice Black, dissenting in People v. Hampton, June 1, 1971, 384 Mich. 669, 187 N.W.2d 404 at 408, it seems "all we have to do in this case is 'to read English intelligently' " to understand what the legislature meant in SDCL 13-19-20 when it directed:

"When the issue of bonds is authorized the school board **shall** cause at least three weeks' notice to be pub-

lished in a legal newspaper within the county and within the district, if there be one, stating the time when and the place where sealed bids for such bonds will be received * * * '' (Emphasis supplied).

What action the board could have taken in the event no bids were received is not before us as this legal step was not complied with.

Under this reasoning, the first election approving that bond issue remains in effect and the second and third elections were of no force and effect. The only difference between the result reached by the majority and my conclusions is the majority opinion approves the third election and my reasoning approves the first. While there is thus little variance as a practical result, the principles of law involved require this dissent.